**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLTON TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-C-6757 |
| | ) | Judge David H. Coar |
| JEFFREY GRAFSTEIN | ) | |
| and BIZ 120, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GRAFSTEIN'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant, JEFFREY GRAFSTEIN ("Grafstein"), by and through his attorneys, Neal,

Gerber & Eisenberg, LLP, hereby answers the Complaint filed by Plaintiff CARLTON

TECHNOLOGIES, INC. ("Plaintiff") and asserts his affirmative defenses as follows:

### Nature of the Case

1.      This is an action to obtain relief for, *inter alia,* violation of the federal Computer Fraud and Abuse Act by Carlton's former employee, Grafstein; Grafstein's blatant violations of the confidentiality and non-solicitation provisions in his Employment Agreement with Carlton; misappropriation of Carlton's trade secrets in violation of the Illinois Trade Secrets Act; and breach of fiduciary duty by Grafstein. While still employed as a trusted, highly-compensated employee of Carlton, where he had access to Carlton's confidential and proprietary information, Grafstein formed a company, Biz 120, to directly compete with and intentionally divert business opportunities away from Carlton using Carlton's own trade secrets and confidential information. Although Carlton's investigation into Grafstein's activities is ongoing, it is evident thus far that Grafstein: (a) accessed Carlton's computer systems for the purpose of stealing numerous files and records containing Carlton's confidential information and trade secrets about its customers, business practices, pricing strategies, and techniques, which he is now using to compete unfairly with Carlton on a daily basis; (b) intentionally diverted business opportunities from Carlton while still under its employment; and (c) solicited and engaged in business transactions with Carlton customers during the restricted non-solicitation period under the Employment Agreement. Unless enjoined by the Court, Grafstein and Biz 120 will continue to violate Carlton's contractual, statutory, and common law rights, cause irreparable injury to Carlton's business, and continue to compete unfairly with Carlton.

**ANSWER:**    Grafstein admits that this is an action alleging a violation of the Computer Fraud and Abuse Act, a violation of the Illinois Trade Secrets Act, breach of contract, and breach of fiduciary duty, but denies that he violated any statute or law.   Grafstein admits that he was employed by Plaintiff and that during his employment, he had access to and came in contact with Plaintiff's information.   Grafstein admits that Biz 120 was incorporated while Grafstein was still employed by Plaintiff.   Grafstein denies the remaining allegations of Paragraph 1.

## The Parties

2.      Carlton is an Illinois corporation with its principal place of business located at 939 North Avenue, Suite 640, Chicago, Illinois.

**ANSWER:**    Grafstein lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 and therefore denies the same.

3.      Grafstein is an individual residing at 729 Sumac Road, Highland Park, Illinois.

**ANSWER:**    Grafstein admits the allegations of Paragraph 3.

4.      Biz 120 is an Illinois corporation with its principal place of business in Highland Park, Illinois. On information and belief, Grafstein is the sole owner and employee of Biz 120.

**ANSWER:**    Grafstein admits the allegations of Paragraph 4.

## Jurisdiction

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Count I alleges a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* This Court has supplemental jurisdiction over the remaining claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

**ANSWER:**    Grafstein admits that jurisdiction is proper.   Grafstein denies the remaining allegations of Paragraph 5. Grafstein specifically denies that he violated 18 U.S.C. § 1030 or any other statute or law.

## Venue

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* Grafstein resides in this judicial district, Biz 120 maintains an office in this judicial district, and Grafstein's and Biz 120's unlawful conduct occurred in this judicial district.

**ANSWER:**    Grafstein admits that venue in this district is proper.  Grafstein denies the remaining allegations of Paragraph 6.

## The Business of Carlton

7.      Formed in 1998, Carlton is a leader in providing and servicing refurbished wireless data collection devices, bar code scanners, and related hardware for commercial clients throughout the United States, Canada, and Europe.

**ANSWER:**    Grafstein lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and therefore denies the same.

8.      Carlton has devoted significant time and expense to developing its confidential customer list. Carlton has three sales professionals who are devoted full-time to developing new business opportunities and servicing existing customers.

**ANSWER:**    Grafstein denies the allegations of Paragraph 8.

9.      Carlton's relationships with its customers are recurring and long-term in nature. Carlton has been doing business with the majority of its customers for several years.

**ANSWER:**    Grafstein denies the allegations of Paragraph 9.

10.     At great time and expense, Carlton has compiled a database of critical confidential information about its customers and prospective customers that provides it with a competitive advantage. Information within this database includes key contacts and decision makers; historical purchase information for each customer; a communication log identifying each communication with the customer reflecting their past, present, and future purchasing, selling, and maintenance needs; pricing strategies; profitability; gross and net profit margins; specific customer installation platforms detailing all equipment and accessories they used in the past and present; and each customer's plans for future purchases and maintenance. This information is not available publicly.

**ANSWER:**    Grafstein denies the allegations of Paragraph 10.

11.    Carlton also buys refurbished and new products from outside vendors. Carlton maintains confidential information about the various vendors, including what products they currently or typically have in inventory, when they may be making these products available, the pricing strategies, profitability, and gross and net profit margins for past transactions. This information is confidential.

**ANSWER:**    Grafstein admits that Plaintiff buys refurbished and new products from

outside vendors.  Grafstein denies the remaining allegations of Paragraph 11.

12.    In its computer systems, Carlton maintains numerous files titled "electronic price ordering guides" or "epog's." This information contains various confidential information about specific products, including part numbers, part descriptions, list prices, and distribution prices. Carlton has compiled these epog files over the course of many years. These files are invaluable to Carlton as this information is no longer publicly available.

**ANSWER:**    Grafstein admits that Plaintiff maintains "epog's."  Grafstein denies the

remaining the allegations of Paragraph 12.

13.    Carlton has implemented several strict security measures to insure that its confidential information and trade secrets are not used or disclosed outside of Carlton or outside of the key employees with whom such information is shared.  For example, all Carlton computer systems are password protected with access limited to employees on a need-to-know basis.  In addition, all employees of Carlton are required to sign confidentiality agreements in which they acknowledge the confidential nature of Carlton's information, agree not to use or disclose such information to the detriment of Carlton, and agree to return all such information to Carlton at the conclusion of their employment. The cabinets, desks, and office areas where documents reflecting Carlton's confidential information are retained are not open to persons who are not employed by Carlton.

**ANSWER:**    Grafstein admits that certain computer systems are password-protected,

that certain employees are required to sign confidentiality agreements, and that certain cabinets,

desks, and office areas are not open to persons who are not employed by Plaintiff.  Grafstein

denies the remaining allegations of Paragraph 13.

### Grafstein's Employment with Carlton

14.    Carlton hired Grafstein as Senior Account Executive and Director of Wireless Data Collection and Scanning Devices commencing on February 21, 2002.  In connection with his hiring, Grafstein entered into an Employment Agreement with Carlton (the "Employment

Agreement"). A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

>    **ANSWER:**    Grafstein admits the allegations of Paragraph 14.

15.    The Employment Agreement provides, in relevant part:

>    **8.    Confidentiality.**
>
>    Employee recognizes that Employer has and will have information regarding the following:
>
>    - products
>    - margins
>    - discounts
>    - business affairs
>    - marketing plans
>    - prices
>    - costs
>    - future plans
>    - costs
>    - customer lists
>
>    and other vital information (collectively "Confidential Information") which is valuable, special and unique assets of Employer. Employee agrees that the Employee will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate in any manner any Confidential Information to any third party even if such Confidential Information was developed by the Employee during the term of employment of Employee or obtained during or after the term of employment of Employee, without the prior written consent of the Employer. Employee will protect the information and treat it as strictly confidential. A violation by Employee of this paragraph shall be a material violation of this Agreement and, in the event of a violation, Employer shall be entitled to both legal and equitable relief. Employee acknowledges and agrees that the sale or unauthorized use or disclosure by Employee of any Confidential Information of the Employer constitutes unfair competition, and during the term of his employment with the Employer and thereafter, Employee will not engage in any unfair competition with the Employer by directly or indirectly using the Confidential Information, nor will Employee directly or indirectly disclose, publish, or make use of, nor authorize anyone else to use Confidential Information or any information or knowledge which

in any way relates to the business, product or services of the Employer.

*        *        *

**10.    Non-Solicitation.**

In order to protect Employer's longstanding business-relationships, Employee agrees that he/she will not, for a period of one hundred eighty days (180) after his/her employment with Employer ceases for any reason, solicit, directly or indirectly, whether for Employee or as an officer, director, employee, agent or independent contractor of another, for purposes of performing any services or furnishing any equipment of a type similar to that provided by Employer to any client of Employer for whom Employee had contact with during the term Employee's employment or any person or entity that Employee learned about or obtained any information concerning said person or entity's need for equipment or services as a result of Employee's employment. "Client," as used herein, shall mean any person or entity for whom Employer performed services or sold equipment within a twelve (12) month period prior to the termination of employee's employment.

**11.    Injunction.**

Employee agrees that should he/she breach any provision of this Agreement, Employer will suffer irreparable injury and will have no adequate remedy at law.  In such an event, Employer shall be entitled to obtain temporary, preliminary and permanent injunctive relief, without bond in any proper court which shall include the Circuit Courts of Cook County, Illinois.  In addition to the above, should Employee breach this Agreement, Employer's rights shall be cumulative and Employer may also seek recovery of money damages as well. Thus, all covenants of this Agreement shall survive the termination of Employee's employment.

**12.    Records Belong to Employer.**

All books, records, files, forms, reports, accounts, papers and documents relating in any manner to the Employer's business, vendors, suppliers, or customers, whether prepared by Employee or anyone else, are the exclusive property of the Employer and shall be returned immediately to the Employer upon termination of employment or upon the Employer's request at any time. This excludes items that belonged to the Employee prior to the beginning his/her employment with Employer.

**13.    Return of Property.**

> Upon termination of employment, the Employee shall deliver all
> property (including keys, records, notes, data, memoranda, models,
> and equipment) that is in the Employee's possession or under the
> Employee's control with is Employer's property.

**ANSWER:**    Grafstein states that the terms of the Employment Agreement speak for

themselves and therefore denies the allegations of Paragraph 15.


16.    As a Senior Account Executive, Grafstein's responsibilities included establishing
and maintaining relationships with a large number of Carlton's customers. Grafstein had regular
contact with those customers, and he had access to confidential information concerning pricing,
revenues, budgets, forecasts, and customer contact information about all of Carlton's customers.

**ANSWER:**    Grafstein admits that his job responsibilities at Plaintiff included, among

other things, establishing and maintaining relationships with customers. Grafstein denies that he

established and maintained relationships with "a large number" of Plaintiff's customers.

Grafstein denies any suggestion that information concerning Plaintiff's prices, revenues, budgets,

forecasts, and customer contact is confidential. Grafstein denies the remaining allegations of

Paragraph 16.


17.    Grafstein created proposals for customers and pitched the proposals to the
customers. Grafstein also met with clients on a regular basis and participated in phone
conversations to establish and maintain good customer relationships. Grafstein attended sales
meetings at Carlton where the sales team would discuss new customers, new pitches, and any
other important issues. In his position, Grafstein had access to all of Carlton's computer systems
and confidential files.

**ANSWER:**    Grafstein admits that his job responsibilities at Plaintiff included, among

other things, creating customer proposals, attending sales-related meetings, and keeping in

contact with customers. Grafstein denies that he "met with clients on a regular basis" and that he

had access "to all of [Plaintiff's] computer systems and confidential files." Grafstein denies the

remaining allegations of Paragraph 17.

18.    Grafstein did not bring an established set of revenue generating customers with him when he joined Carlton.  A majority of the accounts assigned to Grafstein were introduced to him by Carlton.

**ANSWER:**    Grafstein denies the allegations of Paragraph 18.

19.    During the course of his employment with Carlton, Grafstein had access to Carlton's most confidential information and trade secrets, as described above.

**ANSWER:**    Grafstein admits that he had access to certain of Plaintiff's confidential information while he was employed with Plaintiff.  Grafstein denies the remaining allegations of Paragraph 19.

20.    Grafstein resigned from his employment with Carlton On February 8, 2007.

**ANSWER:**    Grafstein admits the allegations of Paragraph 20.

### Grafstein's Formation of Biz 120 to Unfairly Compete With Carlton

21.    Unbeknownst to Carlton, Grafstein surreptitiously began planning his exit from Carlton well before February 2007.  According to public records, Grafstein incorporated Biz 120 in the State of Illinois in December 2006.  In December 2006, Grafstein also purchased a domain name and created his website, biz120inc.com.

**ANSWER:**    Grafstein admits that Biz 120 was incorporated and that a domain name for its website was purchased and biz120inc.com was created in or about December 2006.  Grafstein denies the remaining allegations of Paragraph 21.

22.    Biz 120's business model is indistinguishable from Carlton's business model.  Biz 120 actively buys, sells, and repairs a broad range of technology in direct competition with Carlton.  Biz 120 buys various products, including hand held scanners, imagers, and wireless data collection terminals and sells reconditioned scanners and other accessories.  Biz 120 also repairs scanners and other wireless devices.  Biz 120's website, www.biz120inc.com, promotes itself as providing the identical services Carlton provides (e.g., "Biz 120 provides hardware and repair solutions for scanning and mobile RF devices").

**ANSWER:**    To the extent that the allegations of Paragraph 22 are directed at Biz 120, and not Grafstein, Grafstein is not required to answer them.  Notwithstanding, Grafstein admits

that Biz 120, among other things, buys handheld scanners, imagers, and wireless data collection terminals and sells reconditioned scanners and other accessories. Grafstein denies the remaining allegations of Paragraph 22.

23.    In or around late December 2006, while still employed by Carlton, Grafstein created Biz 120 to directly compete against Carlton. Also during that time, Grafstein intentionally diverted business leads and opportunities from Carlton to Biz 120. While Carlton's investigation is still ongoing, Carlton's preliminary investigation has revealed at least two business opportunities Grafstein did not reveal to Carlton. Both transactions requested quotes for specific products and services that Grafstein deliberately neglected to enter into Carlton's system.

**ANSWER:**    Grafstein admits that Biz 120 was incorporated in or about December 2006. Grafstein denies the remaining allegations of Paragraph 23.

### Breaches of Employment Agreement and Other Unlawful Conduct by Grafstein

24.    Carlton recently discovered that, on a single day in October 2006, Grafstein accessed hundreds of files in Carlton's computer systems containing Carlton's confidential information. These files include:

- Business Plan Outline—contains confidential information regarding Carlton's business model and specific business plan.

- E-D Order and Receipt Procedure—contains confidential information about Carlton's fifth largest customer including its order history as well as preferred procedures for orders, including quantities and pricing information.

- E-D Repair Procedures—contains confidential information regarding Carlton's fifth largest customer and details the processes and procedures for servicing and repairing its specific products.

- Epog—contains product pricing, product part numbers, product descriptions, and quantity information that is no longer available to the public.

- gm-by-prod—contains Carlton's confidential gross profit margin information by product.

- Goals—contains Carlton's confidential business goals.

- Maintenance 2005—contains confidential information regarding Carlton's service and repairs for its second largest service customer, including what products it repaired, cost information, and legal requirements. Grafstein had no legitimate business reason to access this information, the contract was not up for renewal at that time.

- Purchase Contract-AccuCode--contains confidential information regarding customer purchases, including legal requirements on each contract, pricing, and quantity information.

- Repair Procedures—contains confidential information that Carlton has compiled regarding the repair of its products as well as legal requirements for each.

**ANSWER:**    Grafstein admits that at some point during his employment with Plaintiff, he most likely accessed the files described in Paragraph 24.   Grafstein denies the remaining allegations of Paragraph 24.

25.    Carlton's investigation has revealed that, in connection with his enigmatic plan, Grafstein improperly attached a portable media device to Carlton's company issued laptop and downloaded confidential Carlton documents to this external media source for no legitimate business reason with the intent to directly compete and divert business opportunities from Carlton. For example, Grafstein downloaded a "Price Guide." This document, labeled confidential, contains confidential product and pricing information, including list price, distributor price, and Carlton's sales price for multiple products, which would enable Grafstein and Biz 120 to under bid Carlton on all future business opportunities and transactions. Grafstein also downloaded four documents titled "Epog 95," "Epog 97," "Epog 98," and "Epog 99," which further allow Grafstein and Biz 120 to directly and unfairly compete against Carlton on a daily basis.

**ANSWER:**    Grafstein lacks information and knowledge as to what Plaintiff's investigation has revealed, and therefore denies the allegations of Paragraph 25.

26.    Grafstein is able to use this confidential information for the benefit of himself and Biz 120.  The use of all of the sensitive and confidential information Grafstein misappropriated during his employment and prior to his resignation from Carlton allows Grafstein to underbid and divert business opportunities from Carlton and unfairly compete with Carlton utilizing its confidential information.

**ANSWER:**    Grafstein denies the allegations of Paragraph 26.

27.    The files that Grafstein accessed are invaluable to an individual starting a competing company, such as Biz 120. They provide Grafstein and Biz 120 with an unfair competitive advantage with respect to product pricing strategies, customer specific pricing strategies, and customer specific requirements, to name a few.

**ANSWER:**    Grafstein denies the allegations of Paragraph 27.

28.    Although the non-solicitation period in the Employment Agreement did not expire until August, Grafstein blatantly ignored this restriction, solicited Carlton's customers, and diverted business opportunities from Carlton on behalf of Biz 120.  One example of Grafstein's violation of the non-solicitation agreement occurred on May 25, 2007. Grafstein sent an email to the main purchasing contact of a long-time customer of Carlton using the identical font, format, and content of a document he took from Carlton.  The email promoted Biz 120 as an active buyer, seller, and repairer of a broad range of technology including hand held scanners and wireless data collection terminals. Grafstein had contact with this individual during the term of his employment, and Carlton performed services or sold equipment to this customer within a twelve (12) month period prior to the termination of his employment.  Grafstein knowingly violated the terms of his Employment Agreement. On information and belief, Grafstein sent multiple identical or similar communications to other Carlton customers and contacts during the restricted period.

**ANSWER:**    Grafstein states that the terms of the Employment Agreement speak for

themselves.  Grafstein denies the remaining allegations of Paragraph 28.


29.    During the restricted period, Grafstein also went further than just contacting a Carlton customer.  Grafstein and Biz 120 sold and shipped products to Carlton's second largest customer.  Grafstein and Biz 120 utilized the confidential pricing and product information that Grafstein stole from Carlton to gain a competitive advantage and directly divert business opportunities from Carlton.  Grafstein knew he was to have no contact with this customer and intentionally violated his Agreement with Carlton.

**ANSWER:**    Grafstein denies the allegations of Paragraph 29.


30.    Grafstein and Biz 120 are directly competing with Carlton in the exact areas in which Carlton has developed its competitive edge. Grafstein and Biz 120 have an unfair competitive advantage against Carlton because Grafstein can use his knowledge of confidential information about Carlton's pricing and revenue information, customer information, and marketing plans, to steal current and prospective customers and contacts from Carlton.

**ANSWER:**    Grafstein denies the allegations of Paragraph 30.


31.    On information and belief, Grafstein and Biz 120 retained and are currently using records containing Carlton's confidential information and trade secrets.

**ANSWER:**    Grafstein denies the allegations of Paragraph 31.


32.    Grafstein not only accessed a number of Carlton files containing confidential information from his work computer and his home computer, but he intentionally attached a portable media storage system to steal files from Carlton's computer system for personal gain. No legitimate business justification existed for Grafstein to access such files at that time.

Grafstein accessed files relating to confidential business plans, confidential customer pricing information, confidential sales forecasts, and revenue forecasts.

> **ANSWER:**   Grafstein denies the allegations of Paragraph 32.

## COUNT I

### (Violation of the Computer Fraud and Abuse Act by Grafstein)

33.   Carlton realleges and restates paragraphs 1 - 32 as if fully restated herein.

> **ANSWER:**   Grafstein restates and incorporates by reference his answers to Paragraphs

1-32, as if set forth fully herein.

34.   The Computer Fraud and Abuse Act provides for a private right of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. §§ 1030(a)(2)(C).

> **ANSWER:**   Grafstein states that the Computer Fraud and Abuse Act speaks for itself.

Grafstein denies that he violated the Computer Fraud and Abuse Act or any other statute or law.

35.   Carlton has maintained and at all relevant times maintained a computer network that is used to communicate with and service customers throughout the United States, Canada, and Europe.  Carlton's computer system is connected to multiple offices, including in Illinois, Michigan, and Canada, and Carlton maintains an interstate computer network. Carlton's computer network is used in interstate and foreign commerce.

> **ANSWER:**   Grafstein lacks information and knowledge as to the allegations of

Paragraph 35, and therefore denies the same.

36.   In the months leading up to Grafstein's resignation, Grafstein accessed Carlton's computer system on multiple occasions to obtain Carlton's confidential and trade secret information for purposes of unfairly competing against Carlton.

> **ANSWER:**   Grafstein denies the allegations of Paragraph 36.

37.   Grafstein transferred documents, files, and information copied or taken from Carlton's computer network.

**ANSWER:**     Grafstein denies the allegations of Paragraph 37.

38.     By dishonest means, Grafstein knowingly and with the intent to defraud accessed Carlton's computer network for its confidential information and, by means of unauthorized access, Grafstein furthered the intended fraud and obtained confidential information of value.

**ANSWER:**     Grafstein denies the allegations of Paragraph 38.

39.     Each instance of Grafstein's accessing and obtaining information without authorization constitutes a separate violation of the Computer Fraud and Abuse Act. Carlton has been damaged as a result thereof by the amount of at least $5,000 in the past year, including in the form of, *inter alia,* payments for measures aimed at discovering the extent and consequences of Grafstein's unauthorized activities and damage to the integrity of the data.

**ANSWER:**     Grafstein denies the allegations of Paragraph 39.

## COUNT II

### (Violation of Illinois Trade Secrets Act by Grafstein and Biz 120)

40.     Carlton realleges and restates paragraphs 1 - 39 as if fully restated herein.

**ANSWER:**     Grafstein restates and incorporates by reference his answers to Paragraphs 1-39, as if set forth fully herein.

41.     As set forth above, Grafstein was given access to and is in the possession of certain confidential and proprietary information of Carlton constituting "Trade Secrets" as defined in the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*

**ANSWER:**     Grafstein denies the allegations of Paragraph 41.

42.     Carlton's customer lists, historical purchase information, pricing strategies, profitability, gross and net profit margins, and equipment needs and plans are sufficiently secret to derive economic value from not being generally known to other persons or entities who can obtain economic value from its use or disclosure.

**ANSWER:**     Grafstein denies the allegations of Paragraph 42.

43.     Carlton's customer lists, historical purchase information, pricing strategies, profitability, gross and net profit margins, and equipment needs and plans are the subject of efforts that are reasonable under the circumstances to maintain their secrecy or confidentiality.

**ANSWER:**    Grafstein denies the allegations of Paragraph 43.

44.    Grafstein and Biz 120 have used, disclosed or threatened to use or disclose Carlton's trade secret information with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

**ANSWER:**    Grafstein denies the allegations of Paragraph 44.

45.    Grafstein and Biz 120's unauthorized use or disclosure, actual or threatened, violates the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

**ANSWER:**    Grafstein denies the allegations of Paragraph 45.

46.    Grafstein and Biz 120's misappropriation, use, and disclosure of Carlton's trade secrets will cause irreparable harm for which there is no adequate remedy at law.  As a result of the foregoing, Carlton has suffered and will continue to suffer irreparable harm.

**ANSWER:**    Grafstein denies the allegations of Paragraph 46.

## COUNT III

### (Breach of Contract by Grafstein)

47.    Carlton realleges and restates paragraphs 1 - 47 [sic] as if fully restated herein.

**ANSWER:**    Grafstein restates and incorporates by reference his answers to Paragraphs 1-46, as if set forth fully herein.

48.    The Employment Agreement is a valid and enforceable contract.

**ANSWER:**    Grafstein denies the allegations of Paragraph 48.

49.    Carlton fully performed all of its obligations under the Employment Agreement.

**ANSWER:**    Grafstein denies the allegations of Paragraph 49.

50.    Grafstein has breached the Employment Agreement by, *inter alia,* (a) soliciting customers whom he was prohibited from soliciting during the restricted period; and (b) misappropriating and utilizing Carlton's confidential information.

**ANSWER:**    Grafstein denies the allegations of Paragraph 50.

- 14 -

51.    Unless an injunction is issued prohibiting Grafstein from utilizing Carlton's confidential information, Carlton will suffer irreparable and incalculable harm, including the continued loss of proprietary and confidential information for which it may never be compensated.

**ANSWER:**    Grafstein denies the allegations of Paragraph 51.

## COUNT IV

### (Breach of Fiduciary Duty by Grafstein)

52.    Carlton realleges and restates paragraphs 1 - 52 [sic] as if fully restated herein.

**ANSWER:**    Grafstein restates and incorporates by reference his answers to Paragraphs 1-51, as if set forth fully herein.

53.    Grafstein, as an employee of Carlton, owed fiduciary duties with respect to the conduct of Carlton's business.  These fiduciary duties included the obligation to deal honestly, loyally, fairly and openly with Carlton and to not usurp business opportunities.

**ANSWER:**    Grafstein admits that he owed certain fiduciary duties to Plaintiff, but denies that he breached any such fiduciary duties.

54.    Grafstein breached his fiduciary duties to Carlton by, *inter alia,* (a) failing to devote his entire time, energy, attention and loyalty to the business of Carlton; (b) competing with Carlton through his improper use of Carlton's proprietary and confidential information; (c) soliciting actual and prospective Carlton customers and diverting Carlton's business to Biz 120 while still employed by Carlton.

**ANSWER:**    Grafstein denies the allegations of Paragraph 54.

55.    By reason of the foregoing, Grafstein and Biz 120 have directly and proximately caused injury to Carlton, and Carlton has suffered, and continues to suffer, substantial injury as a result of Grafstein's breaches of his fiduciary duties.

**ANSWER:**    Grafstein denies the allegations of Paragraph 55.

WHEREFORE, for all the foregoing reasons, Defendant Jeffrey Grafstein respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and enter judgment in his favor.

## AFFIRMATIVE DEFENSES

1.      Plaintiff was fully aware of Grafstein's alleged misconduct well in advance of filing suit, yet did nothing to make Grafstein aware that it believed Grafstein's conduct to be improper.  Accordingly, Plaintiff's claims are barred by the doctrine of waiver.

2.      The identities of Plaintiff's customers are not "confidential," nor do they rise to the level of trade secret status.  Contact information for Plaintiff's customers is freely available through public means.  Nor does Plaintiff have a relationship with its customers that is "recurring and long-term in nature."  Plaintiff did not provide Grafstein with existing customers or an established network of contacts.  Accordingly, Plaintiff has no interest in its customers worthy of protection, which is a condition to enforcing the restrictive covenants in Grafstein's Employment Agreement.  *E.g.*, *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131 (2d Dist. 1997); *Springfield Rare Coin Galleries v. Mileham*, 250 Ill. App. 3d. 922 (4th Dist. 1993).

3.      In or around June 2007, Grafstein, on behalf of Biz 120, Inc., entered into a contract with Plaintiff to sell to Plaintiff certain refurbished wireless scanning devices and other equipment, at the total cost of $17,135.00.  Grafstein is the beneficiary of this contract.  Biz 120, Inc. delivered the products to Plaintiff, and Plaintiff accepted them.  In July 2007, and again in September 2007, Biz 120, Inc. made written demands to Plaintiff for payment for the products.  To date, Plaintiff has refused to pay the amount due.  On November 6, 2007, Grafstein, on behalf of Biz 120, Inc., filed suit against Plaintiff in the Circuit Court of Cook County, captioned *Biz 120, Inc. v. Bracken Technologies, Inc. d/b/a Carlton Technologies, Inc.*, Case No. 2007-M2-

002346, to collect the amount owed by Plaintiff on the invoices.  (A copy of the Complaint filed

by Grafstein is attached as Exhibit A.)  After receiving notice of that action, and in retaliation for

Biz 120, Inc.'s attempt to collect the amount owed to him by Plaintiff, Plaintiff filed this lawsuit.

Accordingly, all of Plaintiff's claims are barred by the doctrine of unclean hands.


Dated:  January 11, 2008                    Respectfully submitted,

                                            **JEFFREY GRAFSTEIN**


                                            By:___s/ Chad W. Moeller_____
                                                   One of Its Attorneys


Michael G. Kelber
Chad W. Moeller
Neal, Gerber & Eisenberg, LLP
2 N. LaSalle Street, Suite 2200
Chicago, IL  60602
(312) 269-8000

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, SECOND DISTRICT

| | | |
|---|---|---|
| Biz 120, Inc. | ) | NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Bracken Technologies, Inc. d/b/a | ) R/D | November 6, 2007 |
| Carlton Technologies, Inc. | ) | |
| Defendant(s). | ) AMT: | $ 17,135.00 + costs and |
| | ) | pre-judgment interest |

## COMPLAINT
## COUNT I
## BREACH OF ORAL AGREEMENT

The plaintiff, **Biz 120, Inc.,an Illinois corporation,** by its attorneys Bennett R. Klasky and Fred M. Caplan, complaining of the Defendant **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc., an Illinois corporation** , alleges and states as follows:

1.    The plaintiff, **Biz 120, Inc**. entered into a contract with the defendant **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc.,** to provide certain refurbished wireless scanning devices and other equipment  pursuant  to the specific request of the defendant at a total cost of $ 17,135.00 (see invoices attached  as group Exhibit A).

2.    Defendant  has received the products and has not returned or rejected any of the equipment.

3.    That after deducting all just credits, deductions and set-offs, there is now due and owing to the Plaintiff the sum of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00), exclusive of statutory interest.

4.    Plaintiff has completed all it obligations under the contract in that it has delivered to the defendant that which the defendant requested, and defendant has failed to pay the balance due thereon..

5.    Demand has been made on the defendant for payment and Defendant, without cause, unreasonably and vexatiously delayed payment of the amount due. As such, Plaintiff is entitled to recover pre-judgment interest at the rate of 5% per annum pursuant to 815 ILCS 205/2.

6.    That by reason of said non-payment, Plaintiff has sustained damages in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defe ndant, **Bracken Technologies, Inc. d/b/a . Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs and statutory pre-judgment interest.

## COUNT II
## UNJUST ENRICHMENT

1-4    The Plaintiff re-alleges paragraphs 1-4 of Count I as and for 1-4 of this Count II, and further states as follows:

5.    The defendant  requested and received goods from the Plaintiff for re-sale to third parties

6.    On information and belief the defendant has sold the goods to a third party.

7.    On information and belief the defendant has received partial, if not complete payment, from the third party purchasers.

8.    It would be unjust for the defendant to take the Plaintiff's goods and resell them without paying for them.

9.    The reasonable value of the goods provided by the Plaintiff and sold to the  Defendant is Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defendant, **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs.

## COUNT III
## ACCOUNT STATED

1-9    The Plaintiff realleges paragraphs 1-9 of its Count II as and for paragraphs 1-9 of this Count III and states further as follows:

10.    The Plaintiff had an ongoing business relationship where the defendant orders products from the Plaintiff, Plaintiff delivers the items and invoices the Defendant. ,

11.    Defendant received all of the goods, and has never objected to the propriety of the invoices nor prior to this litigation ever raised any defense relating to the quality of the items.

12.    Based on the relationship between the parties, their course of dealings, and defendant's failure to object to the invoices or billing, there is an accounted stated between the parties.

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defendant, **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs.

Respectfully Submitted

Biz 120, Inc.,an Illinois corporation

By:_____
        Bennett R. Klasky, one of its attorneys

The undersigned certifies under penalties as provided by law pursuant to 735 ILCS/109 and Supreme Court Rule 137 that the above information is true and correct, except those statements made on information and belief, in which case, they are verily believed to be true.

Biz 120, Inc.,an Illinois corporation

By: _____
        Jeff Grafstein, President

Bennett R. Klasky (Atty # 54889)
Fred M. Caplan (Atty # 01846)
555 Skokie Boulevard, Suite 500
Northbrook, Illinois 60062
(847) 480-1020

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, SECOND DISTRICT

| | |
|---|---|
| Biz 120, Inc. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) NO. |
| Bracken Technologies, Inc. d/b/a | ) |
| Carlton Technologies, Inc. | ) |
| Defendant(s). | ) |

## AFFIDAVIT

NOW COMES your affiant, Jeff Grafstein, being duly  sworn under oath states as follows:

I am employed by the Plaintiff and  have personal knowledge of the facts and circumstances of this complaint, and I have reviewed the allegations and they are true in substance and in fact.

The defendant, through its agents or employees ordered certain goods, merchandise and or services as more fully set forth in the invoices attached to the complain, which were delivered to defendant.

Defendant has failed and refused to pay invoices after numerous and repeated demands for same.

The balance due and owing as of as of the date of suit is Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs and statutory pre-judgment interest..

Further affiant sayeth naught.

_____

Jeff Grafstein


SWORN AND SIGNED to
before me this 2nd day of
October, 2007.


_____

Notary Public

# GROUP EXHIBIT A

**BIZ 120 INC.**
*LASER FOCUSED*

PO Box 1640
Highland Park, IL 60035

# Statement

| Date |
|---|
| 9/20/2007 |

**To:**

Carlton Technologies, Inc.
Ryan Bracken
2000 W. Fulton Street
Chicago, IL 60612

| Amount Due | Amount Enc. |
|---|---|
| $14,370.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 06/06/2007 | INV #10053. Due 07/06/2007. Orig. Amount $1,575.00. | 1,575.00 | 1,575.00 |
| 06/13/2007 | INV #10058. Due 07/13/2007. Orig. Amount $6,105.00. | 6,105.00 | 7,680.00 |
| 06/14/2007 | INV #10060. Due 07/14/2007. Orig. Amount $1,110.00. | 1,110.00 | 8,790.00 |
| 06/15/2007 | INV #10062. Due 07/15/2007. Orig. Amount $2,220.00. | 2,220.00 | 11,010.00 |
| 06/26/2007 | INV #10076. Due 07/26/2007. Orig. Amount $3,360.00. | 3,360.00 | 14,370.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 3,360.00 | 11,010.00 | 0.00 | $14,370.00 |

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| (847) 831-5149 | (847) 831-5169 | jeffg@biz120inc.com | www.biz120inc.com |



**LASER FOCUSED**

PO Box 1640
Highland Park, IL 60035

# Statement

| Date |
|------|
| 9/20/2007 |

| To: |
|-----|
| Carlton Technologies<br>Joshua Bone<br>2000 W. Fulton Street<br>Chicago, IL 60612 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $2,765.00 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 06/27/2007 | INV #10078. Due 07/27/2007. Orig. Amount $110.00. | 110.00 | 110.00 |
| 07/10/2007 | INV #10092. Due 08/09/2007. Orig. Amount $2,655.00. | 2,655.00 | 2,765.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|-----------------------|------------|
| 0.00 | 0.00 | 2,765.00 | 0.00 | 0.00 | $2,765.00 |

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (847) 831-5149 | (847) 831-5169 | jeffg@biz120inc.com | www.biz120inc.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendant Grafstein's

Answer and Affirmative Defenses to Complaint was served upon the following:

> John M. Dickman
> Ronald Y. Rothstein
> Sheila P. Frederick
> WINSTON & STRAWN LLP
> 35 West Wacker Drive
> Chicago, IL 60601

via electronic filing on this 11th day of January, 2008.


      /s/ Chad W. Moeller