IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARLTON TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 06757 |
| | ) | Judge Coar |
| v. | ) | Magistrate Judge Mason |
| | ) | |
| JEFFREY GRAFSTEIN | ) | |
| and BIZ 120, INC., | ) | Trial by Jury Demanded |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiff, Carlton Technologies, Inc. ("Carlton"), seeks a preliminary injunction for the return of documents, computer files, and other information misappropriated by its former employee, Defendant Jeffrey Grafstein ("Grafstein"), pending the outcome of this ongoing lawsuit. While still employed by Carlton, Grafstein formed a company, Biz 120, Inc. ("Biz 120"), to directly compete with Carlton and intentionally diverted business opportunities away from Carlton using Carlton's own trade secrets and confidential information. Shortly before his resignation from Carlton, Grafstein accessed hundreds of files in Carlton's computer systems containing confidential information and went so far as to download confidential documents off his company issued laptop onto a portable media device.

Grafstein's actions are in direct violation of his Employment Agreement (the "Agreement"), the Illinois Trade Secrets Act ("ITSA"), and the Computer Fraud and Abuse Act ("CFAA"). Grafstein and Biz 120 have no basis for retaining Carlton's property and confidential

information.  Carlton demanded the unconditional return of its property, but its demand was refused.

## FACTUAL BACKGROUND

### I. Carlton's Business

Carlton provides and services refurbished wireless data collection devices, bar code scanners, and related hardware for commercial clients throughout the United States.  (*See* Declaration of Ryan Bracken ¶ 2, attached hereto as Exhibit A, hereinafter "Bracken Decl. ¶ __").  Carlton has expended considerable time and expense to develop its confidential customer list and employs three sales professionals who are devoted full-time to developing new business opportunities and servicing current customers.  (Bracken Decl. ¶¶ 3-4).  Carlton compiled a database of critical confidential information about its customers and prospective customers that provides it with a competitive advantage.  (Bracken Decl. ¶ 4).  This information includes, *inter alia,* key contacts and decision makers; historical purchase information for each customer; a communication log identifying each communication with the customer reflecting their past, present, and future purchasing, selling, and maintenance needs; pricing strategies; profitability; and gross and net profit margins.  (Bracken Decl. ¶ 4).  Carlton also has developed confidential pricing strategies and business plans.  (Bracken Decl. ¶ 6).

### II. Grafstein's Employment With Carlton

Carlton hired Grafstein as a Senior Account Executive and Director of Wireless Data Collection and Scanning Devices in February 2002.  (Bracken Decl. ¶ 13).  In connection with his hiring, Grafstein entered into the Agreement.  (Bracken Decl. ¶ 14).  The Agreement provides, in relevant part:

> **Records Belong to Employer.**  All books, records, files, forms, reports, accounts, papers and documents relating in any manner to

> the Employer's business, vendors, suppliers, or customers, whether prepared by Employee or anyone else, are the exclusive property of the Employer and shall be returned immediately to the Employer upon termination of employment or upon the Employer's request at any time.
>
> **Return of Property.** Upon termination of employment, the Employee shall deliver all property (including keys, records, notes, data, memoranda, models, and equipment) that is in the Employee's possession or under the Employee's control which is Employer's property.

(*See* Employment Agreement ¶¶ 12, 17, attached hereto as Exhibit B, hereinafter "Agreement ¶ __"). The Agreement further provides:

> **Confidentiality.** Employee recognizes that Employer has and will have information regarding the following:
>
> | | |
> |---|---|
> | products | prices |
> | margins | costs |
> | discounts | future plans |
> | business affairs | costs |
> | marketing plans | customer lists |
>
> and other vital information (collectively "Confidential Information") which is valuable, special and unique assets of Employer. Employee agrees that Employee will not at any time or in any manner, either directly or indirectly, divulge, disclose or communicate in any manner any Confidential Information to any third party even if such Confidential Information was developed by the Employee during the term of employment of Employee or obtained during or after the term of employment of Employee, without the prior written consent of the Employer. Employee will protect the information and treat it as strictly confidential. A violation by Employee of this paragraph shall be a material violation of this Agreement and, in the event of a violation, Employer shall be entitled to both legal and equitable relief. Employee acknowledges and agrees that the sale or unauthorized use or disclosure by Employee of any Confidential Information of the Employer constitutes unfair competition, and during the term of his employment with the Employer and thereafter, Employee will not engage in any unfair competition with the Employer by directly or indirectly using the Confidential Information, nor will Employee directly or indirectly disclose, publish or make use of, nor authorize anyone else to use Confidential Information or any

> information or knowledge which in any way relates to the business, product or services of the Employer.

(Agreement ¶ 8).

In connection with his duties at Carlton, Grafstein had access to Carlton's confidential information concerning pricing, revenues, budgets, forecasts, and customer contact information about all of Carlton's customers. (Bracken Decl. ¶ 15). This information is accessible on a secured computer network. (Bracken Decl. ¶¶ 4, 8-9). Grafstein had access to this information both on his company issued laptop as well as remotely from his personal computer. (Bracken Decl. ¶ 15). Grafstein resigned from Carlton in February 2007. (Bracken Decl. ¶ 27).

### III. Grafstein's Formation of Biz 120

Grafstein incorporated Biz 120 in the State of Illinois in December 2006 to directly compete against Carlton. (Bracken Decl. ¶ 16). Biz 120's business model is indistinguishable from Carlton's business model, and Biz 120 promotes itself as providing the identical services as Carlton. (Bracken Decl. ¶ 17). Prior to his resignation and on a single day, Grafstein accessed hundreds of files in Carlton's computer system containing confidential information. (Bracken Decl. ¶ 20). No legitimate business justification existed for Grafstein to access such a large number of files at this time. (Bracken Decl. ¶ 22). These files included documents containing Carlton's business model, confidential information about Carlton's fifth largest customer including its order history as well as preferred procedures for orders, Carlton's confidential gross profit margin information by product, confidential information regarding Carlton's service and repairs for its second largest customer, and confidential information regarding customer purchases, including legal requirements on each contract, pricing, and quantity information. (Bracken Decl. ¶¶ 20-21).

Grafstein also improperly attached a portable media device to Carlton's company issued laptop and downloaded confidential Carlton documents to this external media source. (Bracken Decl. ¶ 23). There was no legitimate business reason for Grafstein to attach a portable media device to his laptop and to download certain documents. (Bracken Decl. ¶ 26). Grafstein downloaded a "Price Guide," labeled confidential, that contains confidential product and pricing information, including list price, distributor price, and Carlton's sales price for a product. (Bracken Decl. ¶ 24). The sensitive and confidential information Grafstein misappropriated during his employment and prior to his resignation puts Grafstein in a position to underbid Carlton on all future business opportunities and transactions and divert business opportunities from Carlton and unfairly compete with Carlton. Carlton did not learn of Grafstein's theft of its information until late in 2007. (Bracken Decl. ¶ 28). Carlton initiated this lawsuit on November 30, 2007. A true and correct copy of the Complaint is attached hereto as Exhibit C.

**IV.     Demand For Return of the Misappropriated Property**

Based on recent communications between Plaintiff's and Defendants' counsel, Carlton is aware that Grafstein continues to possess the materials he misappropriated from Carlton including, *inter alia,* computer files. Counsel for Carlton demanded that Defendants return all information misappropriated from Carlton. Grafstein has not returned these materials. There is no basis for Grafstein and Biz 120 to retain the misappropriated information. The materials belong to Carlton, and Carlton is entitled to the immediate return of this property pending the outcome of this lawsuit.

**ARGUMENT**

**I.     Standards for Preliminary Injunctive Relief**

Carlton is entitled to preliminary injunctive relief to prevent irreparable harm pending resolution of this lawsuit. A court has broad discretionary power to grant preliminary injunctive relief. A plaintiff is entitled to preliminary injunctive relief when it establishes that: (1) it has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm absent injunctive relief; (4) the harm to the plaintiff outweighs the harm that the defendant will suffer if the injunction is granted; and (5) the injunction will not harm the public interest. *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools,* 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (citing *Platinum Home Mortgage Corp. v. Platinum Fin. Group,* 149 F.3d 722, 726 (7th Cir. 1998)). To satisfy the requirement of a reasonable likelihood of success on the merits, a movant need show only a better than negligible possibility of success. *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 846 (7th Cir. 1999). The purpose of a preliminary injunction is to minimize hardship to the litigants pending resolution of the lawsuit. *Anderson v. U.S.F. Logistics (IMC), Inc.,* 274 F.3d 470, 474 (7th Cir. 2001). Carlton easily satisfies these standards and is entitled to the return of its property.

Courts have issued preliminary injunctive relief under similar facts. *See Am. Family Mut. Ins., Co. v. Roth,* No. 05 C 3839, 2007 WL 2377335, at *3 (N.D. Ill. Aug. 16, 2007) (issuing a preliminary injunction order requiring defendants to return to American Family all materials in their possession related to American Family's customers)[1]; *RKI, Inc. v. Grimes,* 177 F. Supp. 2d 859, (N.D. Ill. 2001) (issuing temporary restraining order ordering defendants to return any confidential information in their possession to plaintiff). In *Lawter International, Inc. v. Carroll,* the Appellate Court noted that the lower court issued a temporary restraining order directing defendants to return any and all documents in their possession belonging to the plaintiff. 116 Ill. App. 3d 717, 722, 451 N.E.2d 1338, 1342 (Ill. App. Ct. 1983).

**II.     Carlton is Likely to Succeed on the Merits of its Claims**

   A.     <u>Carlton is Likely to Succeed on its Breach of Contract Claim</u>

The Agreement specifically requires Grafstein to return all property that is in his possession "which is Employer's property." The Agreement also provides that all books, records, and other files relating in any manner to Carlton's business are the exclusive property of Carlton and shall be returned "immediately … upon termination of employment." (Agreement ¶ 17). The Agreement also prohibits Grafstein from divulging or utilizing any of Carlton's confidential information.

Grafstein downloaded computer files from Carlton's secured network and continues to possess these materials. Carlton, through its counsel, demanded the return of this information. Grafstein has refused this demand. *See Springfield Rare Coin Galleries, Inc. v. Mileham,* 250 Ill. App. 3d 922, 943-44, 620 N.E.2d 479, 492-93 (Ill. App. Ct. 1993) (instructing plaintiff to return property to defendant when plaintiff retained unauthorized control over the property in violation of the employment agreement).

   B.     <u>Carlton is Likely to Succeed on its Trade Secrets Claim</u>

A party seeking an injunction under the ITSA must prove the existence of a trade secret and misappropriation. *PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1268 (7th Cir. 1995). Evidence of both elements are present here.

The ITSA defines "trade secrets" as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are

---

[1]     For the Court's convenience, a copy of the unpublished decisions is attached hereto at Exhibit D.

7

>     reasonable under the circumstances to maintain its secrecy and
>     confidentiality.

765 Ill. Comp. Stat. 1065/2(d) (2007).  Customer lists and pricing models and methodologies are trade secrets if an employer has invested "substantial time, money and manpower to develop secret advantages over its competitors." *ILG Indus., Inc. v. Scott,* 49 Ill. 2d 88, 93, 273 N.E.2d 393, 396 (Ill. 1971); *see also Outsource Int'l, Inc. v. Barton,* 192 F.3d 662, 668 (7th Cir. 1999) (finding items such as cost and pricing figures and comparable rates protectible as trade secrets); *RKI, Inc. v. Grimes,* 177 F. Supp. 2d 859, 873-74 (N.D. Ill. 2001); *Stampede Tool Warehouse, Inc. v. May,* 272 Ill. App. 3d 580, 589, 651 N.E.2d 209 (1995) (finding customer list to be a trade secret based on the "laborious method" use to create the list and the security efforts used to protect the information).

        As discussed above, Carlton has invested significant time and resources into developing and compiling a database containing confidential customer contact information, historical purchase information, pricing strategies, profitability, gross and net profit margins, and customers' plans for future purchases and maintenance.  (Bracken Decl. ¶¶ 3-4).  Carlton's customer list and other information cannot be duplicated without substantial effort.  (Bracken Decl. ¶ 5).  Carlton derives substantial economic value from keeping this information secret.  (Bracken Decl. ¶¶ 4-6).

        Carlton goes to great lengths to ensure that this information remains confidential.  (Bracken Decl. ¶¶ 8-9).  All Carlton computer systems are password protected with access limited to employees on a need-to-know basis.  (Bracken Decl. ¶ 9).  Every Carlton employee signs an Employment Agreement in which they acknowledge the confidential nature of Carlton's information and agrees not to disclose or use such information to the detriment of Carlton.

(Bracken Decl. ¶ 10). Carlton takes appropriate security measures to ensure that its customer information is not used or disclosed outside of Carlton. (Bracken Decl. ¶ 8).

Misappropriation occurs when an employee acquires a trade secret through "improper means," such as theft, bribery, and breach of a confidential relationship, or an employee discloses a trade secret without express or implied consent. 765 Ill. Comp. Stat. 1065/2 (2007). Under the plain language of the ITSA, "[a]ctual or threatened misappropriation may be enjoined." *Id.* Misappropriation can be shown in one of three ways: improper acquisition, unauthorized disclosure or unauthorized use. *Id.* at 1065/2(b).

Here, Grafstein improperly attached a portable media device to Carlton's computer and downloaded confidential documents including a price guide, labeled confidential, containing confidential product and pricing information, including list price, distributor price, and Carlton's sales price for a product to the external media source. (Bracken Decl. ¶ 24). Grafstein also accessed hundreds of files in Carlton's computer systems prior to his resignation containing Carlton's confidential information, including business plan outlines, repair procedures, and confidential gross profit margin information by product. (Bracken Decl. ¶¶ 20-21). There was no legitimate reason for Grafstein to access this information, and Carlton needs to fully understand the extent to which Grafstein used and/or misappropriated this information.

C.   Carlton is Likely to Succeed on its CFAA Claim

To establish liability under the CFAA, a plaintiff must show that the defendant: (1) either fraudulently or intentionally accessed a protected computer "without authorization or [in excess of] authorized access;" and (2) as a result of this conduct, caused damage of at least $5,000. 18 U.S.C. § 1030(g). The CFAA includes injunctive relief as a potential civil remedy. *Id.* § 1030(g); *U.S. Greenfiber v. Brooks,* No. Civ.A. 02-2215, 2002 WL 31834009, at *1 (W.D.

9

La. Oct. 25, 2002) (issuing a temporary injunction requiring the employee to return the company's materials that she improperly accessed). Under the CFAA, improperly accessing, deleting or tampering with an employer's network is actionable. *See Int'l Airport Centers, L.L.C. v. Citrin,* 440 F.3d 418, 420 (7th Cir. 2006); *see also Creative Computing v. Getloaded.com, LLC,* 386 F.3d 930 (9th Cir. 2004) (upholding CFAA violation where, *inter alia,* individual downloaded and sent to his home email account the confidential information of his employer's server so that he could access the server from home and retrieve customer lists); *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140 (D. Kan. 2007) (granting preliminary injunction when forensic computer tests revealed that someone was on defendant's pass code protected computer and because defendant placed a flash drive on the computer to upload personal information).

As discussed in detail above, in the months leading up to his termination, Grafstein accessed Carlton's computer systems on multiple occasions to obtain Carlton's confidential information and trade secrets for purposes of competing unfairly with Carlton. (Bracken Decl. ¶¶ 20-21). By dishonest means, Grafstein transferred documents and files from Carlton's computer network by means of unauthorized access. (Bracken Decl. ¶ 23). Carlton has been damaged in the amount of at least $5,000, including payments for measuring the extent and consequences of Grafstein's unauthorized activities. (Bracken Decl. ¶ 29).

**III.    Carlton Will Suffer Irreparable Harm and Has No Adequate Remedy**

Where, as here, trade secrets are involved, the threat is significant that the harm experienced as a result of the misappropriation or misuse will be irreparable. *See IDS Fin. Servs., Inc. v. Smithson,* 843 F. Supp. 415, 418 (N.D. Ill. 1994); *AmeriGas Propane, Inc. v. Crook,* 844 F. Supp. 379, 390 (M.D. Tenn. 1993) ("competitive injuries and loss of goodwill …

are difficult to quantify"). There is a presumption of irreparable harm to a plaintiff in a trade secret misappropriation case. *Qsrsoft, Inc. v. Rest. Tech., Inc.,* No. 06 C 2734, 2006 WL 2990432, at *11 (N.D. Ill. Nov. 2, 2006). Notably, Grafstein even agreed in the Agreement that "… should [Grafstein] breach any provision of this Agreement, Employer will suffer *irreparable injury* and will have no adequate remedy at law." (Agreement ¶ 11) (emphasis added). For these reasons, legal remedies alone cannot sufficiently redress the harms that Defendants have inflicted and will inflict upon Carlton. Because Carlton will suffer irreparable harm to its business and customer relationships which cannot be compensated monetarily, it has no adequate remedy at law. Carlton is entitled to the return of its property and confidential information that Grafstein misappropriated.

## IV. The Balance of Harms Favors Granting a Preliminary Injunction

As discussed above, Carlton will suffer irreparable harm if Grafstein does not return the confidential information he stole. The balance of harms favors the issuance of a preliminary injunction. There is no reason for Grafstein to keep in his possession the information that he misappropriated from Carlton in order to continue to compete unfairly with Carlton.

## CONCLUSION

For the foregoing reasons, Carlton respectfully requests that the Court enter a Preliminary Injunction against Defendants requiring them to return all information in their possession or control that was taken from Carlton and/or its computer systems.

Respectfully submitted,

CARLTON TECHNOLOGIES, INC.

By: <u>     /s/ John M. Dickman     </u>
       John M. Dickman

John M. Dickman
Ronald Y. Rothstein
Sheila P. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (phone)
(312) 558-5700 (fax)
jdickman@winston.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION on January 29, 2008, through the Court's electronic filing system, to the individuals listed below:

Michael G. Kelber
Chad W. Moeller
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Suite 2200
Chicago, Illinois 60602


　　　/s/ John M. Dickman
　　　　　John M. Dickman