**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLTON TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-C-6757 |
| | ) | Judge David H. Coar |
| JEFFREY GRAFSTEIN | ) | |
| and BIZ 120, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PRELIMINARY RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendants, JEFFREY GRAFSTEIN ("Mr. Grafstein") and BIZ 120, INC. ("Biz 120"), oppose Plaintiff, CARLTON TECHNOLOGIES, INC's. ("Carlton") Motion for A Preliminary Injunction because:

1) Carlton is unlikely to succeed on the merits of its claims because Grafstein has not retained any trade secret or proprietary information of Carlton's.

2) Carlton has suffered no damages — let alone irreparable harm — during the more than one year since the alleged wrongful conduct occurred;

3) even if Carlton's allegations were true, Carlton would have an adequate remedy at law; and

4) the information Carlton alleges as proprietary is in fact publicly available, so granting the requested equitable relief would severely and wrongfully interfere with Mr. Grafstein's ongoing business and the public's right to this information.

Mr. Grafstein's labor and employment counsel was out of town this entire week. As a result, Mr. Grafstein and Biz 120 request that the Court issue a briefing schedule to provide them

with at least ten (10) business days to fully brief its opposition to Carlton's Motion including the following issues:

**Carlton Has Suffered No Irreparable Harm**

Carlton's delay of over four months in bringing its preliminary injunction motion since the filing of its Complaint belies that it has suffered any — let alone irreparable — harm. Mr. Grafstein and Biz 120 have been doing business for nearly a full year, yet Carlton fails to cite a single example of any lost business, harm to Carlton's reputation, or unfair use of any purported trade secrets or proprietary information by Mr. Grafstein or Biz 120. (See Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, pps. 10-11.)

**Carlton's Claims Are Likely To Fail**

Carlton's claims are unlikely to succeed on their merits because the information alleged to be a trade secret is actually compiled and provided by Original Equipment Manufacturers ("OEM's) and distributors, not by Carlton. This information is readily available to the public and can be recreated through public means. For example, Carlton emphasizes that Mr. Grafstein allegedly downloaded a "Price Guide" (Carlton Brief, pp. 5, Bracken Declaration, ¶ 24), but such Price Guides are created and provided by OEMs, not by Carlton, and are freely available to those in the industry. (Grafstein Declaration, ¶ 5, attached hereto as Schedule 1.)

Accordingly, given the lack of discovery on what information is at issue, as well as any evidentiary showing by Carlton or any finding by the Court, the relief sought by Carlton's Motion for Preliminary Injunction is premature. Carlton requests an order that Mr. Grafstein and Biz 120, Inc. "immediately return *any and all information in their possession or control,* including but not limited to documents, computer files, copies, reproductions, summaries or notes, taken from Carlton and/or its computer systems." Carlton's Motion For A Preliminary

Injunction, (emphasis added.)  But to the extent that there is a dispute about what information originated with Carlton and further what information is not publicly available and unprotectible, granting such a broad injunction would be improper.  *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 2008 WL 90081 (7th Cir.)[1]  (finding that the district court's failure to define the alleged "trade secret" or "confidential information" yielded an impermissibly vague and improper order).  Accordingly, Carlton's claim for relief is impermissibly vague and overly-broad.

Moreover, Carlton's claim under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq.* will fail on the merits because Carlton will be unable to show that the alleged conduct caused Carlton damage or that Carlton suffered a loss of at least $5,000.00 in value.  See *Garelli Wong & Associates, Inc. v. Nichols,* 2008 WL 161790 (N.D. Ill). Carlton will be unable to show any damages suffered by Carlton as a result of any alleged unauthorized access to Carlton's computer, given that Carlton fails to even allege that Mr. Grafstein or Biz 120 in any way interrupted, destroyed, erased, or in any way interfered with Carlton's computers.  In fact, the only allegation asserted by Carlton in its Motion is a completely unsupported statement by Carlton's President, Ryan Bracken, that "Carlton spent in excess of $5,000.00" investigating the allegations against Mr. Grafstein.  See Declaration ¶ 29 of Ryan Bracken, attached to Carlton Memorandum In Support its Motion for A Preliminary Injunction.  Such an unsubstantiated allegation is insufficient to state a claim under the CFAA.  *Id.* at *7.  Finally, without its claim under the CFAA, Carlton lacks subject matter jurisdiction in this Court since its other claims are brought solely under supplemental jurisdiction.  Accordingly, Carlton's claims are likely to fail on the merits.

---

[1] For the Court's convenience, copies of the unpublished decisions are attached hereto as Schedule 2.

**This Action Is Merely A Bad-Faith Retaliatory Suit**

Not only has Carlton not been irreparably harmed by Mr. Grafstein's or Biz 120's alleged conduct, but this entire action is merely a retaliatory lawsuit brought by Carlton in response to a state court claim filed by Mr. Grafstein against Carlton seeking to recover $17,135.00 in unpaid invoices. Carlton conveniently omits from its motion that Mr. Grafstein terminated his employment with Carlton on good terms one year ago, in February 2007. (Grafstein Declaration, ¶ 6.) Upon Mr. Grafstein's resignation, he informed Ryan Bracken (President of Carlton) of his plans to go into business on his own, and Mr. Bracken told Mr. Grafstein that Carlton would have no problem with him making sales calls directed to brokers and dealers of equipment related to wireless data collection and scanning devices. (Grafstein Declaration, ¶ 6.) Mr. Grafstein abided fully with the non-solicitation obligations of his employment contract.

In fact, Mr. Grafstein was on good enough terms with Carlton that Carlton was willing to do business with his new company, Biz 120 — purchasing equipment from Biz 120. (Grafstein Declaration, ¶ 7.) However, by July of 2007, it became clear to Mr. Grafstein that Carlton would not pay outstanding invoices due to Biz 120 for a total of $17,135.00. (Grafstein Declaration, ¶ 8.) As a result, Biz 120, filed a lawsuit on October 3, 2007, seeking judgment for the amount owed by Carlton (Grafstein Declaration ¶¶ 9-10). But rather than pay Biz 120 the money it owed, Carlton filed this action.

**Conclusion**

In sum, Mr. Grafstein and Biz 120 can show that Carlton's Motion for a Preliminary Injunction should be denied because Carlton is unlikely to succeed on the merits, it does not face irreparable harm and the balance of harm of granting the unnecessary injunction will cause far more harm to Mr. Grafstein and Biz 120 than denying the injunction would do to Carlton. In

fact, a full review of the facts will demonstrate that this case is not about trade secrets but rather retaliation against Mr. Grafstein and Biz 120 over a $17,135.00 collection dispute.

For the foregoing reasons, Grafstein and Biz 120 request that the Court deny Carlton's motion for a preliminary injunction or at least postpone its ruling and issue a scheduling order, granting Mr. Grafstein and Biz 120 at least ten (10) business days to fully brief the issues with appropriate discussion of caselaw and a fuller statement of the facts.


Dated:  February 1, 2008          Respectfully submitted,

                                  **JEFFREY GRAFSTEIN**


                                  By:   s/ Michael G. Kelber
                                        One of Its Attorneys


                                  **BIZ 120, INC.**


                                  By:   s/ Michael G. Kelber
                                        One of Its Attorneys



Michael G. Kelber
Chad W. Moeller
Neal, Gerber & Eisenberg, LLP
2 N. LaSalle Street, Suite 2200
Chicago, IL  60602
(312) 269-8000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Preliminary

Response to Plaintiff's Motion for A Preliminary Injunction, was served upon the following:

> John M. Dickman
> Ronald Y. Rothstein
> Sheila P. Frederick
> WINSTON & STRAWN LLP
> 35 West Wacker Drive
> Chicago, IL 60601

via electronic filing on this 1st day of February, 2008.


                              _____/s/ Michael G. Kelber_____


NGEDOCS: 1501130.1

# SCHEDULE 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLTON TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-C-6757 |
| | ) | Judge David H. Coar |
| JEFFREY GRAFSTEIN | ) | |
| and BIZ 120, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JEFFREY GRAFSTEIN

I, JEFFREY GRAFSTEIN, hereby declare and state as follows:

1.     I am currently the President and sole shareholder of Biz 120, Inc., a provider of hardware and repair solutions for users of scanning and mobile radio-frequency (RF) devices.

2.     I have been in the business of buying, selling, leasing and servicing point-of-sale systems, and scanning and wireless data-collection equipment for nearly fifteen (15) years.  Beginning in 1993, I began working for Comdisco, Inc., where I worked until 1997.  In 1997, I began working for R2 Corporation, where I continued to buy, sell, lease and provide service related to point-of-sale systems and scanning and wireless data-collection equipment.  In February, 2002, I began working for Plaintiff, Carlton Technologies, Inc., where again, I bought, sold, leased and serviced scanning and wireless data collection equipment.

3.     During my fifteen (15) years in this business, I have developed a broad network of relationships with both purchasers and sellers of point-of-sale systems and scanning

and wireless data-collection equipment. Indeed, many of these relationships pre-date my employment with Carlton.

4.     Despite working for Carlton for five (5) years, I am unaware of any proprietary pricing strategy employed by Carlton. To the contrary, based on my experience in at least three competing companies in this technology service and supply business, the only "strategy" was for account executives, like myself, to buy equipment at as low a price as possible and, conversely, to sell its inventory of equipment at as high a price as possible, while also providing the best service possible.

5.     "Electronic Price Ordering Guides" or "Epogs" are compiled and distributed by original equipment manufacturers, not by Carlton. These Epogs are freely available to those in the industry. For example, all major distributors, (*e.g*, ScanSource, BlueStar, Ingram-Micro) offer access to this pricing information electronically, as well as in free printed catalogs and CD-ROMS.

6.     When I advised Ryan Bracken, President of Carlton, that I was resigning my employment in order to start my own business, Mr. Bracken specifically told me that he did not have any objection if my new business pursued brokers of point-of-sale systems, scanning and wireless data-collection equipment, as Carlton's business was primarily focused at retailers.

7.     Indeed, the relationship between my new business, Defendant, Biz 120, and Carlton was amicable. For example, beginning in March, 2007, I sold equipment to Carlton. At the beginning, Carlton paid its invoices on time.

8.      But beginning with orders in June, 2007, Carlton refused to pay the outstanding balance on equipment sold to Carlton by Biz 120. For example, on July 10, 2007, I confirmed shipment information for certain equipment in an e-mail to Mr. Bracken. (See Exhibit "A"). When I did not receive payment for the equipment, I followed up with Joshua Bone, an employee of Carlton. He initially stated that I would be paid for the equipment, but no payment was forthcoming. (See correspondence from Jeffrey Grafstein to Joshua Bone dated July 11, 2007 and July 27, 2007 at Exhibit "B"). At this point, Mr. Bone stopped returning my phone calls and continued to withhold payment for the equipment.

9.      Having no other recourse to collect the $17,135.00 owed to Biz 120 for equipment purchased and accepted by Carlton, I engaged an attorney to pursue collection on behalf of Biz 120. On October 3, 2007, Biz 120 filed a breach of contract claim for collection of money outstanding. (See Complaint attached as Exhibit "C").

10.      On November 16, 2007, Carlton, represented by its counsel in this action, filed an Answer to the Complaint. (See Exhibit "D").

I declare under penalty of perjury that the following is true and correct.

Executed on this 1st day of February, 2008.

**JEFFREY GRAFSTEIN**

# EXHIBIT "A"

## Jeff Grafstein

| | |
|---|---|
| **From:** | Biz 120 Inc. [jeffg@biz120inc.com] |
| **Sent:** | Tuesday, July 10, 2007 4:28 PM |
| **To:** | rbracken@carltontechnologies.com |
| **Cc:** | jbone@carltontechnologies.com |
| **Subject:** | Shipment confirmation - (Qty=9) 740A terminals |
| **Attachments:** | Inv_10092_from_Biz_120_Inc..pdf |

Hi Ryan

Your order for (qty=9) Intermec 740A4300E100N000 terminals will ship today per UPS waybill #1Z37F3X70395824260, via UPS Ground service.

Delivery is scheduled for tomorrow.

Your invoice is attached. Please remit payment per our agreed to Terms (Net 30).

Thanks.

Sincerely,

Biz 120 Inc.
(847) 831-5149


**To view your invoice**
Open the attached PDF file. You must have Acrobat® Reader® installed to view the attachment.

1

# EXHIBIT "B"

## Jeff Grafstein

| | |
|---|---|
| **From:** | Jeff Grafstein [jeffg@biz120inc.com] |
| **Sent:** | Friday, July 27, 2007 8:14 AM |
| **To:** | 'Joshua M. Bone' |
| **Subject:** | RE: Bill Payment 9465 From Carlton Technologies, Inc. |

Hi Joshua,

I've yet to receive payment for 10053 or any other overdue invoice.

Has anything been mailed out since your return?

**Jeff Grafstein**

**Biz 120, Inc.**

Direct dial:   847 831 5149
Direct fax:   847 831 5169
Mobile:       847 975 1276

**E-mail:      jeffg@biz120inc.com**

---

**From:** Joshua M. Bone [mailto:jbone@carltontechnologies.com]
**Sent:** Wednesday, July 11, 2007 11:33 AM
**To:** jeffg@biz120inc.com
**Subject:** Bill Payment 9465 From Carlton Technologies, Inc.

10053 is now paid, check will go out on Friday. I am out of the office next week so the remaining invoices will be paid when I return.

1

# EXHIBIT "C"

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, SECOND DISTRICT

| | | |
|---|---|---|
| Biz 120, Inc. | ) | |
|        Plaintiff, | ) NO. | 20072002346<br>CALENDAR/ROOM 0204<br>TIME 09:00<br>Breach of Contract |
| v. | ) | |
| | ) | |
| Bracken Technologies, Inc. d/b/a | ) R/D | November 6, 2007 |
| Carlton Technologies, Inc. | ) | |
|        Defendant(s). | ) AMT: | $ 17,135.00 + costs and<br>pre-judgment interest |
| | ) | |

## COMPLAINT
### COUNT I
### BREACH OF ORAL AGREEMENT

The plaintiff, **Biz 120, Inc.,an Illinois corporation,** by its attorneys Bennett R. Klasky and Fred M. Caplan, complaining of the Defendant **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc., an Illinois corporation** , alleges and states as follows:

1.  The plaintiff, **Biz 120, Inc.** entered into a contract with the defendant **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc.,** to provide certain refurbished wireless scanning devices and other equipment pursuant to the specific request of the defendant at a total cost of $ 17,135.00 (see invoices attached as group Exhibit A).

2.  Defendant has received the products and has not returned or rejected any of the equipment.

3.  That after deducting all just credits, deductions and set-offs, there is now due and owing to the Plaintiff the sum of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00), exclusive of statutory interest.

4.  Plaintiff has completed all it obligations under the contract in that it has delivered to the defendant that which the defendant requested; and defendant has failed to pay the balance due thereon..

5.  Demand has been made on the defendant for payment and Defendant, without cause, unreasonably and vexatiously delayed payment of the amount due. As such, Plaintiff is entitled to recover pre-judgment interest at the rate of 5% per annum pursuant to 815 ILCS 205/2.

6.  That by reason of said non-payment, Plaintiff has sustained damages in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defe ndant, **Bracken Technologies, Inc. d/b/a . Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs and statutory pre-judgment interest.

### COUNT II
### UNJUST ENRICHMENT

1-4     The Plaintiff re-alleges paragraphs 1-4 of Count I as and for 1-4 of this Count II, and further states as follows:

5.     The defendant  requested and received goods from the Plaintiff for re-sale to third parties

6.     On information and belief the defendant has sold the goods to a third party.

7.     On information and belief the defendant has received partial, if not complete payment, from the third party purchasers.

8.     It would be unjust for the defendant to take the Plaintiff's goods and resell them without paying for them.

9.     The reasonable value of the goods provided by the Plaintiff and sold to the  Defendant is Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defendant, **Bracken Technologies, Inc. d/b/a . Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs.

### COUNT III
### ACCOUNT STATED

1-9     The Plaintiff realleges paragraphs 1-9 of its Count II as and for paragraphs 1-9 of this Count III and states further as follows:

10.     The Plaintiff had an ongoing business relationship where the defendant orders products from the Plaintiff, Plaintiff delivers the items and invoices the Defendant..,

11.     Defendant received all of the goods, and has never objected to the propriety of the invoices nor prior to this litigation ever raised any defense relating to the quality of the items.

12.     Based on the relationship between the parties, their course of dealings, and defendant's failure to object to the invoices or billing, there is an accounted stated between the parties.

WHEREFORE, plaintiff, **Biz 120, Inc.,an Illinois corporation** prays for judgment against the defendant, **Bracken Technologies, Inc. d/b/a. Carlton Technologies, Inc., an Illinois corporation,** in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs.

Respectfully Submitted

Biz 120, Inc.,an Illinois corporation

By: _____
Bennett R. Klasky, one of its attorneys

The undersigned certifies under penalties as provided by law pursuant to 735 ILCS/109 and Supreme Court Rule 137 that the above information is true and correct, except those statements made on information and belief, in which case, they are verily believed to be true.

Biz 120, Inc.,an Illinois corporation

By: _____
Jeff Grafstein, President

Bennett R. Klasky (Atty # 54889)
Fred M. Caplan (Atty # 01846)
555 Skokie Boulevard, Suite 500
Northbrook, Illinois 60062
(847) 480-1020

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, SECOND DISTRICT

| | | |
|---|---|---|
| Biz 120, Inc. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. |
| Bracken Technologies, Inc. d/b/a | ) | |
| Carlton Technologies, Inc. | ) | |
| Defendant(s). | ) | |

### AFFIDAVIT

NOW COMES your affiant, Jeff Grafstein, being duly sworn under oath states as follows:

I am employed by the Plaintiff and have personal knowledge of the facts and circumstances of this complaint, and I have reviewed the allegations and they are true in substance and in fact.

The defendant, through its agents or employees ordered certain goods, merchandise and or services as more fully set forth in the invoices attached to the complain, which were delivered to defendant.

Defendant has failed and refused to pay invoices after numerous and repeated demands for same.

The balance due and owing as of as of the date of suit is Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00) plus court costs and statutory pre-judgment interest..

Further affiant sayeth naught.

Jeff Grafstein

SWORN AND SIGNED to
before me this 2nd day of
October, 2007.

"OFFICIAL SEAL"
_____ Caplan
Notary Public, Notary Public, ... e of Illinois
My Commission Exp. 11/12/2009

# GROUP EXHIBIT A

Jan 31 2008 13:30     BENNETT R. KLASKY & ASSOC     8474805740                    P.9



LASER FOCUSED

PO Box 1640
Highland Park, IL 60035

# Statement

| Date |
|------|
| 9/20/2007 |

| To: |
|-----|
| Carlton Technologies, Inc.<br>Ryan Bracken<br>2000 W. Fulton Street<br>Chicago, IL 60612 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $14,370.00 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 06/06/2007 | INV #10053. Due 07/06/2007. Orig. Amount $1,575.00. | 1,575.00 | 1,575.00 |
| 06/13/2007 | INV #10058. Due 07/13/2007. Orig. Amount $6,105.00. | 6,105.00 | 7,680.00 |
| 06/14/2007 | INV #10060. Due 07/14/2007. Orig. Amount $1,110.00. | 1,110.00 | 8,790.00 |
| 06/15/2007 | INV #10062. Due 07/15/2007. Orig. Amount $2,220.00. | 2,220.00 | 11,010.00 |
| 06/26/2007 | INV #10076. Due 07/26/2007. Orig. Amount $3,360.00. | 3,360.00 | 14,370.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|------------|
| 0.00 | 0.00 | 3,360.00 | 11,010.00 | 0.00 | $14,370.00 |

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (847) 831-5149 | (847) 831-5169 | jeffg@biz120inc.com | www.biz120inc.com |



**LASER FOCUSED**

PO Box 1640
Highland Park, IL 60035

# Statement

| Date |
|------|
| 9/20/2007 |

| To: |
|-----|
| Carlton Technologies<br>Joshua Bone<br>2000 W. Fulton Street<br>Chicago, IL 60612 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $2,765.00  |             |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 06/27/2007 | INV #10078. Due 07/27/2007. Orig. Amount $110.00. | 110.00 | 110.00 |
| 07/10/2007 | INV #10092. Due 08/09/2007. Orig. Amount $2,655.00. | 2,655.00 | 2,765.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|--------------------|-----------|
| 0.00 | 0.00 | 2,765.00 | 0.00 | 0.00 | $2,765.00 |

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (847) 831-5149 | (847) 831-5169 | jeffg@biz120inc.com | www.biz120inc.com |

2120 – Served    2220 - Not Served    2620 – Sec. of State
2121 – Alias Served    2221 – Alias Not Served    2621 – Alias Sec. of State
Summons (This form replaces CCM 0646, CCM1 0646, CCM1 0651, CCMD 0648, and CCMD 0649-2 thru 6)    CCM N649-60M-9/15/06 (          )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
SECOND    MUNICIPAL DISTRICT

20072002346

**Name All Parties**

BIZ 120, INC., an Illinois corporation
_____
                    Plaintiff(s)

v.

Bracken Technologies Inc, d/b/a Carlton Technologies Inc
_____
                    Defendant(s)

%o Res. Agent Anthony G. Barone

721 Enterprise Dr., #200, Oakbrook, IL 60523
_____
          Address of Defendant(s)

Case No. _____

Amount Claimed: $ 17,135.00 + costs & interest

Appearance Filing/Return Date: 11/6/07

Status Date: December 4, 2007

Trial Date: _____

Time: _____    Room: _____

Breach of Contract

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required:

1. To file your written appearance by yourself or your attorney and pay the required fee in:

☐ District 1: Richard J. Daley Center; 50 West Washington, Room 602; Chicago, IL 60602
☒ District 2: 5600 Old Orchard Rd., Rm 136; Skokie, IL 60077    ☐ District 5: 10220 S. 76th Ave., Rm 121; Bridgeview, IL 60455
☐ District 4: 1500 Maybrook Dr., Rm 236; Maywood, IL 60153

on November 6 _____, 2007 ____, between the hours of 8:30 a.m. and 2:30 p.m.;

☐ District 3: 2121 Euclid, Rm 121; Rolling Meadows, IL 60008    ☐ District 6: 16501 S. Kedzie Pkwy., Rm 119; Markham, IL 60428
on _____, _____, before 9:00 a.m.

2. File your answer to the complaint before 9:00 a.m. as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on the reverse side.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 3 days before the day for appearance.

THERE WILL BE A FEE TO FILE YOUR APPEARANCE. SEE FEES ON THE REVERSE SIDE OF THIS FORM.

Atty. No.: 54889 & 01846

Name: Bennett Klasky & Fred Caplan

Atty. for: Plaintiff

Address: 555 Skokie Boulevard, Suite 500

City/State/Zip: Northbrook, IL 60062

Telephone: (847) 480-1020

WITNESS _____

DOROTHY BROWN, Circuit Court Clerk

Date of Service: _____,
(To be inserted by officer on copy left with Defendant or other person)

SEE REVERSE SIDE

** Service by Facsimile Transmission will be accepted at: _____
(Area Code)    (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Jan 31 2008 13:31    BENNETT R. KLASKY & ASSOC    8474805740    p.12

PE SUM    SHERIFF'S OFFICE OF DUPAGE COUNTY, ILLINOIS    DEPUTY 443

CKET #: 32007-278-142901    CASE #: 072002346  -001    ORIGIN NUMBER: 002
TE FILED 10/03/07  DATE RECEIVED 10/05/07  SUSPENDS 11/01/07  # OF WORKSHEETS: 001

FENDANT BRACKEN TECHNOLOGIES INC. D/B/A CARLETON TECHNOLOGIES - C/O ANTHONY BARONE

         HOME ADDRESS               WORK ADDRESS
                                721 ENTERPRISE DR.
                                #200
                                OAK BROOK, IL               OPERATOR ID
                                                            111

AINTIFF BIZ 120, INC.
ERVICE
INFO


*************************************************************************
) I CERTIFY THAT I SERVED THIS SUMMONS ON THE DEFENDANT AS FOLLOWS:

_ 1 PERSONAL SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE
    NAMED DEFENDANT PERSONALLY.

_ 2 SUBSTITUTE SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE
    DEFENDANT'S USUAL PLACE OF ABODE WITH SOME PERSON OF THE FAMILY OR PERSON
    RESIDING THERE, OF THE AGE OF 13 YEARS OR UPWARDS, AND INFORMING THAT
    PERSON OF THE CONTENTS THEREOF. ALSO, A COPY OF THE SUMMONS WAS MAILED TO
    THE DEFENDANT AT THE ABOVE ADDRESS. DATE_____  INITIALS_____

_ 3 SERVICE ON: CORPORATION  X  COMPANY____ BUSINESS____ PARTNERSHIP____
    BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE REGISTERED AGENT,
    AUTHORIZED PERSON, OR PARTNER OF THE DEFENDANT.

) JOHN E. ZARUBA, SHERIFF, BY: *Robert Whitehead #443* DEPUTY

  1 SEX *M* M/F    RACE *W*    AGE *45*    HT *5'0"*    WT *155*
  2 WRIT SERVED ON *Anthony Barone*    RELATION *RG*

  THIS *9TH* DAY OF *OCT 2007* TIME *1:50* AM/(PM)

ADDITIONAL *MOVED TO 17W635 BUTTERFIELD*
COMMENTS *SUITE 145 SERVED THERE*


*************************************************************************
                    ATTEMPTED SERVICES:    DATE      TIME   AM/PM  DEPUTY#

HE NAMED DEFENDANT WAS NOT SERVED.          _____   ___!___   _____
         REASON NOT SERVED:                 _____   ___!___   _____

_01 MOVED          ____06 NO SUCH ADDRESS   _____   ___!___   _____
_02 NO CONTACT     ____07 EMPLOYER REFUSAL  _____   ___!___   _____
_03 AVOIDING:      ____08 RETURNED BY ATTY  _____   ___!___   _____
    SEE COMMENTS   ____09 DECEASED
_04 NOT LISTED     ____10 NO LONGER EMPLOYED _____  ___!___   _____
_05 WRONG ADDRESS  ____11 OTHER: SEE
                          COMMENTS ABOVE

IOUNT RECEIVED    48.00    CK

(This form replaces CCM 0009)                    CCG N009-200M-6/5/03(                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

_____ DEPARTMENT/Second _____ DISTRICT

| | |
|---|---|
| BIZ 120, INC., an Illinois corporation | No. 20072002346 |
| **Plaintiff** | Claimed $: $17,135 + costs and interest |
| v. | Return Date: November 6, 2007 |
| Bracken Technologies Inc., d/b/a Carlton Technologies, Inc. | Court Date: December 4, 2007 |
| **Defendant** | Room No.: 0204 |

5600 Old Orchard Road, Rm 136 Skokie, IL

**Address of Court District for Filing**

### APPEARANCE AND JURY DEMAND*

☑ **General Appearance**     ☑ 0900 – Fee Paid        ☐ 0909 – No Fee
                              ☐ 0904 – Fee Waived      ☐ 0908 – Trial Lawyers Appearance – No Fee

☐ **Jury Demand\***          ☐ 1900 – Appearance and Jury Demand/Fee Paid
                              ☐ 1909 – Appearance and Jury Demand/No Fee Paid

The undersigned enters the appearance of:     ☐ Plaintiff     ☑ Defendant

Bracken Technologies Inc. d/b/a Carlton Technologies, Inc.
_____
(Insert Litigant's Name)

_____
**Signature**

☑ **Initial Counsel of Record**   ☐ Pro Se (Self-represented)
☐ **Additional Appearance**       ☐ Substitute Appearance

☑ **ATTORNEY NO.** 90875          ☐ **PRO SE:** 99500

(Please complete the following contact information.)

Name: Winston & Strawn LLP (Ronald Y. Rothstein)

Atty. for: Defendant

Address: 35 West Wacker Drive

City/State/Zip: Chicago, IL 60601

Telephone: (312) 558-5600

*Strike demand for trial by jury if not applicable.

> ### Important
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax) or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_____
Attorney for Defendant

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# EXHIBIT "D"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, SECOND DISTRICT

BIZ 120, INC.,                              )
                                            )
              Plaintiff,                     )
                                            )
       vs.                                   )        Case No. 20072002346
                                            )
BRACKEN TECHNOLOGIES, INC. d/b/a            )
CARLTON TECHNOLOGIES, INC.,                  )
                                            )
              Defendant.                     )

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, for its Answer to Plaintiff's Complaint, states as follows:

### COUNT I

### BREACH OF ORAL AGREEMENT

1.    The Plaintiff, Biz 120, Inc., entered into a contract with the Defendant, Bracken Technologies, Inc. d/b/a Carlton Technologies, Inc., to provide certain refurbished wireless scanning devices and other equipment pursuant to the specific request of the Defendant at a total cost of $17,135.00 (see invoices attached as group Exhibit A).

**ANSWER:**    Defendant denies the allegations contained in Paragraph 1.

2.    Defendant has received the products and has not returned or rejected any of the equipment.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 2.

3.    That after deducting all just credits, deductions and set-offs, there is now due and owing to the Plaintiff the sum of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00), exclusive of statutory interest.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 3.

4.    Plaintiff has completed all its obligations under the contract in that it has delivered to the Defendant that which the Defendant requested, and Defendant has failed to pay the balance due thereon.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 4.

5.     Demand has been made on the Defendant for payment and Defendant, without cause, unreasonably and vexatiously delayed payment of the amount due. As such, Plaintiff is entitled to recover pre-judgment interest at the rate of 5% per annum pursuant to 815 ILCS 205/2.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 5.

6.     That by reason of said non-payment, Plaintiff has sustained damages in the amount of Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

**ANSWER:**     Defendant denies the allegations contained in Paragraph 6.

## COUNT II

### UNJUST ENRICHMENT

1.-4.    The Plaintiff realleges Paragraphs 1-4 of Count I as and for 1-4 of this Count II, and further states as follows:

**ANSWER:**     Defendant restates and incorporates herein the answers to Paragraphs 1 through 4 as if fully set forth herein.

5.     The Defendant requested and received goods from the Plaintiff for presale to third-parties.

**ANSWER:**     Defendant admits that it requested and received goods from the Plaintiff. Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 5.

6.     On information and belief the Defendant has sold the goods to a third-party.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 6.

7.     On information and belief the Defendant has received partial, if not complete payment, from the third-party purchasers.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 7.

8.     It would be unjust for the Defendant to take the Plaintiff's goods and resell them without paying for them.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 8.

2

9.      The reasonable value of the goods provided by the Plaintiff and sold to the Defendant is Seventeen Thousand One Hundred Thirty-Five and No/100ths ($17,135.00).

**ANSWER:**    Defendant denies the allegations contained in Paragraph 9.

## COUNT III

### ACCOUNT STATED

1.-9.    The Plaintiff realleges Paragraphs 1-9 of its Count II as and for Paragraphs 1-9 of this Count III and states further as follows:

**ANSWER:**    Defendant restates and incorporates herein the answers to Paragraphs 1 through 9

of Count II as if fully set forth herein.

10.     The Plaintiff had an ongoing business relationship where the Defendant orders products from the Plaintiff, Plaintiff delivers the items and invoices to the Defendant.

**ANSWER:**    Paragraph 10 is unintelligible and, therefore, Defendant denies same.

11.     Defendant received all of the goods, and has never objected to the propriety of the invoices nor prior to this litigation ever raised any defense relating to the quality of the items.

**ANSWER:**    Defendant admits that it received certain goods from the Plaintiff.  Except as

expressly admitted, Defendant denies the remaining allegations in Paragraph 11.

12.     Based on the relationship between the parties, their course of dealings, and Defendant's failure to object to the invoices or billing, there is an accounted stated between the parties.

**ANSWER:**    Defendant denies the allegations in Paragraph 12.

Respectfully submitted,

BRACKEN TECHNOLOGIES, INC. d/b/a
CARLTON TECHNOLOGIES, INC.

By: _____
                    One of Its Attorneys

3

Ronald Y. Rothstein
John M. Dickman
Sheila P. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:    (312) 558-5600
Facsimile:    (312) 558-5700

4

## VERIFICATION

I, Ryan Bracken, state under penalty of perjury that I am the President of Carlton Technologies, Inc. In this capacity, I reviewed the foregoing Answer and believe that such responses are true and accurate to the best of my knowledge and belief.

_____

Subscribed and sworn to before me
this 16th day of November 2007.

_Donna Marie DePillo_
NOTARY PUBLIC

My Commission expires 10/6/08 .

OFFICIAL SEAL
DONNA MARIE DEPILLO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/06/08

5

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendant, hereby certifies that he has caused a true and correct copy of the foregoing DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT to be served via U.S. mail, postage pre-paid, by depositing the same in the U.S. Mail at 35 West Wacker Drive, Chicago, Illinois on this 16th day of November, 2007, upon:

Bennett R. Klasky
Fred M. Caplan
555 Skokie Boulevard, Suite 500
Northbrook, Illinois 60062

6

# SCHEDULE 2



Slip Copy                                                                                           Page 1

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
GARELLI WONG & ASSOCIATES, INC.,
Plaintiffs,
v.
William M. NICHOLS, Defendant.
**No. 07 C 6227.**

Jan. 16, 2008.

David N. Michael, Mark Douglas Brookstein,
Gould & Ratner, Chicago, IL, Robert G. Riegel, Jr.
, Fowler White Boggs Banker PA, Jacksonville, FL,
for Plaintiffs.

Daniel Patrick Hogan, McCabe & Hogan, Palatine,
IL, for Defendant.

***MEMORANDUM OPINION***

CHARLES P. KOCORAS, District Judge.

*\*1* Before this Court is Defendant's motion to
dismiss Plaintiff's three-count Complaint. For the
following reasons, Defendant's motion is granted.

**BACKGROUND**

According to the allegations of the complaint,
which we must accept as true for purposes of this
motion, Plaintiff Garelli Wong and Associates, Inc.
("Garelli Wong") is an Illinois corporation. Garelli
Wong operates three Illinois offices located in the
cities of Chicago, Schaumburg, and Oakbrook.
Garelli Wong provides temporary and permanent
accounting and financial personnel and services to
its clients. The company has devoted substantial
time and expense to identify clients receptive to
Garelli Wong's services by finding the decision
makers within their clients' organizations,
cultivating their client relationships and learning

their clients' needs and preferences, determining
how those needs match the capabilities of its
employees, and by working out client-specific
pricing and service arrangements.

Garelli Wong employees who are temporarily
assigned to work for clients are referred to as its
"consultants," and prospective consultants are
termed "candidates." Garelli Wong created a
database ("the Database") that contains candidate
and client activity tracking information (including
billing rates; margins; candidate identities and
status; employee information; client identities and
the names of client contacts; decision makers; and
requirements). Garelli Wong does not share this
information with its competitors but rather has made
efforts to maintain the confidentiality of the
information contained in the Database. The
Database is housed in a secure server and can only
be accessed by an authorized user who enters a
personalized password. Garelli Wong's employees
use the information in the Database to expand client
relationships and build goodwill.

Around April 2006, MPS Group, Inc. ("MPS")
purchased and became the owner of Garelli Wong.
As owner, MPS acquired Garelli Wong's existing
assets, which included any employment agreements
that Garelli Wong had with its employees.
Defendant William Nichols ("Nichols") was one
such employee who had entered into an
employment agreement with Garelli Wong prior to
the purchase.

Nichols, an Illinois resident, began working as a
Senior Staffing Consultant out of Garelli Wong's
Chicago office around December 1, 2003. In that
capacity, Nichols was Garelli Wong's primary
contact with certain of its clients and prospective
clients. Nichols met with candidates and clients and
used the Database in an effort to match the
candidates' and clients' needs, preferences, and
requirements. In doing so, Nichols developed

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

personal relationships with certain clients, employees, candidates, and consultants whom Garelli Wong recruited. From these relationships, Nichols acquired knowledge about the clients' hiring managers, who according to Garelli Wong are often the most important client contacts. Nichols' employment with Garelli Wong also allowed him to obtain information about Garelli Wong's pool of screened consultants who serve its clients, including the rates Garelli Wong pays to its various consultants, the mark-up on those rates, and the flexibility Garelli Wong has for different clients on project-specific, or sometimes client-specific, placement.

**\*2** When Nichols began working for Garelli Wong he signed a Confidentiality and Non-Solicitation Agreement ("the Agreement") "that would be governed by, construed, and enforced in accordance with the laws of the state of Illinois." Paragraph 2 of the Agreement states:
> Except as permitted by this Agreement or with the written consent of the Company, the Employee shall not at any time during or after employment with the Company, divulge, disclose or communicate, directly or indirectly, to any person, corporation or other entity, or use for his/her own benefit or for the benefit of anyone other than the Company, any of the Company's trade secrets or confidential or proprietary information, including, but not limited to, Client or Potential Client identities and contacts; Client or Potential Client lists; Client or Potential Client financial, business or personal information; other information relating to Client or Potential Client accounts, feedback or directions; financial and business information relating to the Company and its transactions; and any other confidential information relating to the Company, its business, or its Clients or Potential Clients, including the Company's candidate database.
> Employee agrees that all confidential and proprietary information shall belong to and be the sole and exclusive property of the Company.

Paragraph 3 of the Agreement states:
> Immediately upon termination of employment with the Company, the Employee shall return to the Company all materials that relate to the Company, its business, its Clients or Potential Clients which came into the Employee's possession during the Employee's employment by the Company.

Paragraph 4 of the Agreement states that for the six-month period following the end of Nichols' employment with Garelli Wong, he would not, for the benefit of any "Competitive Business":
> directly or indirectly perform services for or solicit (or assist other persons or entities to perform services for, or solicit) any Client for which the Employee, during the one-year period prior to the termination of the Employee's employment with the Company: 1) performed services, 2) had any direct Client or Potential client, or 3) received financial credit for any placements.

After MPS purchased Garelli Wong, Nichols entered into a Restricted Stock Agreement (the "RSA") with MPS. The RSA specifically provided that, for purposes of the restrictive covenants set forth in the RSA, the term "Employer" included subsidiaries or affiliates of MPS. As per the RSA, Nichols was entitled to 1,500 unvested shares of MPS Group's common stock, which had a vesting date (the "Vesting Date") of March 7, 2008. If Nichols ended his employment prior to the Vesting Date, he forfeited all 1,500 shares. Nichols also agreed to a restrictive covenant clause in the RSA, which states, in part:
> In consideration of being offered the Award herein, Employee hereby agrees that during his ... employment with the Company ... and for the period of twelve (12) months immediately following the termination of Employee's employment such that Employee is no longer employed in any capacity with the ... Company ... Employee shall not, either directly or indirectly ... engage in or assist others in ...:

**\*3** (c) entering into, engaging in, being employed by, being connected to, consulting or rendering services for, any enterprise that is offering or performing services similar to, or in competition with, business or services offered or performed by Employer at the time of the termination of Employee's employment from the Employer ... within a 50 square mile radius of each office to

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                                          Page 3

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

which Employee was assigned or, if in management, each office or offices under Employee's managerial authority, at any time during the twelve (12) month period immediately preceding the termination of Employee's employment from the Employer ...

On September 28, 2007, Nichols voluntarily resigned from employment with Garelli Wong. According to the complaint, Nichols is currently working in direct competition with Garelli Wong. Prior to his resignation, Garelli Wong alleges that Nichols compiled significant amounts of Garelli Wong's confidential and proprietary client and candidate information by entering the Database without proper authority to do so. According to Garelli Wong, Nichols attempted to send this information to his personal e-mail account and/or copied it for his personal use.

Garelli Wong alleges that immediately following Nichols' resignation, he contacted a Garelli Wong candidate and attempted to recruit that candidate for a position on behalf of his new and current employer. In order to contact that candidate, Nichols used information to which only Garelli Wong employees had access.

In October 2007, Garelli Wong learned that Nichols had solicited and attempted to recruit a Garelli Wong candidate. Garelli Wong also learned that Nichols contacted or was trying to contact one or more Garelli Wong clients to set up meetings. Garelli Wong believes that Nichols is now working for a new company in a capacity similar to the position he held with Garelli Wong and is using the confidential and proprietary information he obtained from Garelli Wong to contact, solicit, recruit, or attempt to solicit and recruit Garelli Wong's candidates in order to compete against Garelli Wong for those clients.

On November 2, 2007, Garelli Wong filed a three-count complaint against Nichols. The complaint sets out two breach of contract claims and one violation of federal law. The first count alleges that Nichols violated the Agreement he entered into with Garelli Wong. The second count

alleges Nichols breached the RSA he entered into with MPS. The final count states that Nichols violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* Nichols filed a motion to dismiss Garelli Wong's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Nichols argues that Garelli Wong's **CFAA** count fails to state a claim upon which **relief** can be granted and contends that if the **CFAA** claim is dismissed, Garelli Wong's two remaining counts should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because federal jurisdiction would not be present.

**LEGAL STANDARD**

*4 Fed.R.Civ.P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999).

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986). The plaintiff bears the burden of establishing that the jurisdiction requirements have been met. *see Kontos v. U.S. Dep't of Labor,* 826 F.2d 573, 576 (7th Cir.1987). When a defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1), the plaintiff must support its

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                      Page 4

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

allegations with competent proof of jurisdictional facts. *Thomson v. Gaskillwsa,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

With these principles in mind, we consider the instant motion.

## DISCUSSION
### I. Computer Fraud and Abuse Act

The subject matter jurisdiction of Garelli Wong's complaint is premised entirely upon its CFAA count. As such, we will look to the sufficiency of this claim first. As Nichols correctly points out, the complaint does not specify the sections of the statute upon which it relies. However, 18 U.S.C. § 1030(g) mandates that a civil action pursuant to the CFAA "may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." The allegations in Garelli Wong's complaint contain language that could apply to violations of § 1030(a)(5)(B)(i) as it pertains to § 1030(a)(5) (A)(i), (ii), and (iii):

Whoever-
(5) (A)(i) knowingly causes the transmission of ... information ... and as a result of such conduct, intentionally causes ***damage*** without authorization, to a protected computer;
(ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes ***damage;*** or
(iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes ***damage ...; and***
*5 (5) (B)(i) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused ... ***loss*** to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value.
(emphasis added).

A point of contention between the parties exists at to whether a plaintiff must allege both damage *and* loss in order to sufficiently plead a civil action under the CFAA or whether pleading damage *or* loss is enough. A thorough reading of the text above shows that it is necessary for a plaintiff to plead both damage *and* loss in order to properly allege a

civil CFAA violation.

The CFAA defines "damage" as "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S .C. § 1030(e)(8). "Loss" is defined under the CFAA to mean:
any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. 18 U.S.C. § 1030(e)(11).
Incorporating these definitions into its argument, Nichols contends that his alleged unauthorized acts of copying and emailing Garelli Wong's computer files did not impair the integrity or availability of the information in the Database and did not cause any interruption to the computer service. More pointedly, Nichols' argument is that one cannot be held civilly liable under the CFAA for copying information from a computer without authority to do so; a violation requires more.

### A. Damage

According to Nichols, Garelli Wong's CFAA count should be dismissed because the complaint does not and cannot allege damage or loss as defined by the CFAA. Nichols cites *Airport Centers, LLC v. Citrin* in support of his position that the unauthorized copying and emailing of files from a computer is not enough to form the basis of a civil action under the CFAA. 440 F.3d 418 (7th Cir.2006). In *Citrin,* the defendant was employed by the plaintiff and given a company laptop to use and record data he collected while working. *Id.* at 419. The defendant then quit his job with the plaintiff and began working for himself. *Id.* Before returning the laptop to the plaintiff, the defendant deleted all the data on it and installed a secure-erasure program to prevent recovery of the deleted files. *Id.* In finding that the plaintiff had sufficiently stated a civil claim under the CFAA, the Seventh Circuit confirmed that installing a program intended to erase and delete files is sufficient to show damage as it is defined under the CFAA because the installation of such a

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

program impairs the integrity or availability of data, programs, or information on the computer. *Id.*

Although the principal discussion in *Citrin* involved the meaning of the term "transmission" as used in § 1030(a)(5)(i), the damage referred to the computer files (as opposed to the physical computer), that is, the deletion of data stored in the computer. The statutory requirement of *damage* was satisfied since the defendant's acts impaired the integrity or availability of data. No similar allegation is made in the instant case.

*6 In further support of his position, Nichols cites *ResDev v. Lot Builders* and *Worldspan v. Orbitz, LLC*, two unpublished cases, which discuss "integrity" as it is used in the CFAA's definition of damage. 2005 WL 1924743 (M.D.Fla. Aug.10, 2005); 2006 WL 1069128 (N.D.Ill. April. 19, 2006) . We believe the discussion of "integrity" in these cases lends guidance in the instant matter. In *ResDev*, defendants allegedly visited their former employer's website and accessed information that was not password protected. 2005 WL 1924743 at *1. The plaintiff in *ResDev* sought to recover **damages** under the **CFAA** based on the defendants viewing of the information and the information's alleged trade secret value. *Id.* Ultimately, the *ResDev* court held that the **CFAA's** use of the word "integrity" to define damage required "some diminution in the completeness or useability of data or information on a computer system" and concluded that the defendants' alleged conduct "did not come within the CFAA's meaning[;]" and therefore did not violate the CFAA. *Id.* at *5.

The *Orbitz* court's analysis of the *ResDev* court's discussion of "integrity" is also worth mentioning. In *Orbitz*, the court found that the plaintiff's complaint "merely parrot[ed] the 'causing damage' text of the CFAA in conclusory fashion and fail[ed] to allege any facts indicating that the completeness, useability, or availability of [the plaintiff's] data was impaired." *Orbitz* 2006 WL 1069128 at *5. As a result, the *Orbitz* court rejected the plaintiff's argument that "the mere 'taking of information' constitute[d] 'damage' under the CFAA." *Id.*

Garelli Wong cites several district court cases in opposition of Nichols' arguments. However, we find none of these cases persuasive. First, Garelli Wong cites *George S. May Intern. Co. v. Hostetler*, a 2004 case decided by this court, where we held: "we see no principled reason, nor has [defendant] offered one, why infringement of copyrighted material taken from a protected computer system would not qualify as impairment of the integrity of the copyrighted information." 2004 WL 1197395, *4. In *Hostetler*, the plaintiff alleged that the defendant used his access to his company's computer system to take several copyrighted documents with him when he ended his employment and, then, later used these documents to the detriment of his former employer. *Id.* at *3. As our holding in *Hostetler* makes clear, the defendant in *Hostetler* did not provide us with any reasons on which to base a finding in its favor. *Id.* at *4. We also point out that the CFAA was amended after the decision in *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121. (W.D.Wash.2000), a case relied on in *Hostetler*. Such reliance is no longer compelling in light of the statutory amendments and other cases decided post-amendment.

Similarly, we are not inclined to follow *Pacific Aerospace & Electronics, Inc. v. Taylor*, which Garelli Wong cites to show that misappropriation is considered to be damage or loss under the CFAA. The *Taylor* court conducted an extensive review of the CFAA before it explained that "caselaw supports an employer's use of the CFAA's civil remedies to sue [its] former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer systems." 295 F.Supp.2d 1188, 1195 (E.D.Wash.2003). The conclusion reached in *Taylor* does not take into account that a civil violation of the CFAA requires "impairment to the integrity or availability of data, a program, a system, or information" and "interruption in service." 18 U.S.C. § 1030. Allegations of trade secret theft and misappropriation do not suggest such a violation. Furthermore, the *Taylor* court partly based its conclusion on *Shurgard*, which we no longer find

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                      Page 6

Slip Copy, 2008 WL 161790 (N.D.Ill.)

**(Cite as: 2008 WL 161790 (N.D.Ill.))**

influential for reasons given above.

**\*7** Ultimately, we find that *ResDev* and *Orbitz* set out the correct analysis to be performed in deciding whether allegations are sufficient to properly plead damage under the CFAA. Though Garelli Wong would like us to believe that recent amendments to the CFAA are intended to expand the use of the CFAA to cases where a trade secret has been misappropriated through the use of a computer, we do not believe that such conduct alone can show "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Therefore, we conclude that Garelli Wong has failed to sufficiently plead damage under the CFAA.

**B. Loss**

As previously mentioned, Nichols believes that Garelli Wong's CFAA count should be dismissed because the complaint does not and cannot allege loss as defined by the CFAA. Garelli Wong cites *Patriot Homes, Inc. v. Forest River Housing, Inc.* for the proposition that it asserted a cognizable claim under the CFAA by alleging that it suffered "losses" in excess of $5,000 as a result of Nichols' conduct. 2006 WL 1752141, *4 (N.D.Ind. June 21, 2006). Nichols counters with the discussion set out in *ResDev* that it is not enough to simply allege any monetary expenditure to assert a cognizable claim under the **CFAA**; instead, "loss" is limited to **costs** that are "directly associated with, or with addressing, an unauthorized computer-access event." 2005 WL 1924743 at *4. The Supreme Court recently clarified that to properly plead a cause of action, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [with] more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly,* 127 S.Ct. at 1959. In its current form, the complaint states only that "Defendant's conduct caused losses to Garelli Wong in excess of $5,000" with no further elaboration. While we agree with Nichols that Garelli Wong does not presently allege loss, we disagree that it cannot do so. Conceivably, Garelli Wong could provide the necessary information in an amended complaint

(consistent with its obligations under Fed.R.Civ.P. 11 that such an allegation is made only after reasonable inquiry into its factual foundation). However, in light of our conclusions that both damage and loss are necessary to state a cause of action under the CFAA and that Garelli Wong cannot allege damage, dismissal of Count III is warranted even though Garelli Wong could address the deficiencies within its allegations of loss in an amended complaint.

**II. State Law Claims**

The sole jurisdictional basis asserted for Counts I and II is the supplementary jurisdiction provided by 28 U.S.C. § 1367(a). When a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). In our circuit, the preferred course of action is to relinquish jurisdiction in such circumstances without good reasons to do otherwise. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727 (7th Cir.1998). Garelli Wong has not offered a compelling reason for us to maintain jurisdiction over its state-law claims, and in light of the early stage of this case, we will decline to exercise jurisdiction over Counts I and II. Therefore, those counts are dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

**\*8** For the foregoing reasons, Count III of Garelli Wong's complaint is dismissed for failure to state a claim. Counts I and II are dismissed for lack of subject matter jurisdiction.

Slip Copy, 2008 WL 161790 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# Westlaw.

2008 WL 90081                                                                                          Page 1

--- F.3d ----, 2008 WL 90081 (7th Cir.(Ind.))

**(Cite as: 2008 WL 90081 (7th Cir.(Ind.)))**

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Seventh Circuit.
PATRIOT HOMES, INC. and Patriot
Manufacturing, Inc., Plaintiffs-Appellees,
v.
FOREST RIVER HOUSING, INC., doing business
as Sterling Homes, Defendants-
Appellants.
No. 06-3012.

Argued March 29, 2007.
Decided Jan. 10, 2008.

**Background:** Copyright holder sued alleged
infringer and four of its employees, who were
formerly employed by copyright holder, alleging
copyright infringement and violations of Computer
Fraud and Abuse Act (CFAA), for copying modular
home designs. The United States District Court for
the Northern District of Indiana, Allen Sharp, J.,
2006 WL 1752143, issued preliminary injunction
order to enjoin misappropriation of manufacturer's
copyrights, confidential information, trade secrets,
and computer files. Defendants appealed.

**Holding:** The Court of Appeals, Evans, Circuit
Judge, held that preliminary injunction was
impermissibly vague.
Vacated and remanded.

**[1] Federal Courts** ☞815

170Bk815 Most Cited Cases
Court of Appeals reviews the district court's
decision to grant a preliminary injunction for abuse
of discretion.

**[2] Copyrights and Intellectual Property** ☞85
99k85 Most Cited Cases

Preliminary injunction preventing alleged copyright
infringer of modular home designs from using,
copying, disclosing, converting, appropriating,
retaining, selling, transferring, or otherwise
exploiting "copyrights, confidential information,
trade secrets, or computer files" of copyright holder,
and also requiring certification that copied materials
of copyright holder's "property, confidential
information and trade secrets on computer files and
removable media (CDs, DVDs, tapes, etc.) have
been deleted or rendered unusable," was
impermissibly vague regarding what trade secrets or
confidential information would violate injunction,
under rule requiring specificity of injunctions, since
most of copyright holder's allegedly confidential
information was readily available from various
states to which holder had submitted systems
manuals, quality assurance manuals, model
drawings, and engineering calculations for homes to
be sold, and copyright holder had not requested
states to keep information confidential. Fed.Rules
Civ.Proc.Rule 65(d), 28 U.S.C.A.
Appeal from the United States District Court for
the Northern District of Indiana, South Bend
Division. No. 05 C 471--Allen Sharp, Judge.

Scott D. Matthews, Ice Miller, Indianapolis, IN, for
Plaintiffs-Appellees.

D. Michael Anderson, Barnes & Thornburg, South
Bend, IN, Ryan M. Fountain, Mishawaka, IN, for
Defendants-Appellants.

Before BAUER, [FN1] FLAUM, and EVANS,
Circuit Judges.

EVANS, Circuit Judge.

*1 Two companies, Patriot Homes and Forest
River Housing, compete in the modular housing
manufacturing industry. Patriot sued Forest River
Housing's subsidiary, Sterling Homes, and four
former Patriot employees (now Sterling employees)

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2008 WL 90081                                                                                        Page 2

--- F.3d ----, 2008 WL 90081 (7th Cir.(Ind.))

**(Cite as: 2008 WL 90081 (7th Cir.(Ind.)))**

for copying their home designs. Sterling appeals the district court's preliminary injunction order which enjoined it from misappropriating Patriot's copyrights, confidential information, trade secrets, and computer files.

The parties have had, for several years, a rather contentious relationship. In 2004, Forest River tried to purchase Patriot. When Patriot declined Forest River's overtures, Forest River did an end run and hired away four of Patriot's employees (they are named as individual defendants in this case) and then formed a new company, Sterling, to build modular homes. Before leaving Patriot, the four employees copied information from the company's computers and brought the materials with them when they joined Sterling. Patriot's former general manager assumed the role of general manager of Sterling. Sterling allegedly used the information taken from Patriot's computers to build and sell homes. In the spring of 2005, Sterling distributed brochures containing exact copies of Patriot's floor plans. Sterling's homes, however, were less expensive. Patriot filed suit, alleging copyright infringement under 17 U.S.C. §§ 101 *et seq.* and violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Patriot sought preliminary and permanent injunctive relief against Sterling to prevent the disclosure or use of its information and trade secrets, an order requiring Sterling to return all of Patriot's confidential information and trade secrets that are allegedly under Sterling's control, compensatory damages, punitive damages, and pre- and post-judgment interest.

Sterling does not deny that Patriot's former employees took information from Patriot's computers before they jumped ship, nor does it deny that it has used the information. Sterling contends, however, that all of Patriot's alleged trade secret and/or confidential information is readily ascertainable and in the public domain. As a result, Sterling maintains that its use of the information was not improper. To understand this contention, a brief look at the modular home business is helpful.

Modular home manufacturers must obtain approval

from the states where they hope to sell their homes. To obtain state approval, each company must submit to the state the systems manuals, quality assurance manuals, model drawings, and substantiating engineering calculations for the homes that the manufacturer plans to sell in that state. Patriot primarily sells its homes in Big Ten territory: Indiana, Ohio, Michigan, and Illinois. It has submitted the required information to each state.

After the preliminary injunction hearing, Sterling sent Freedom of Information Act (FOIA) requests to Indiana, Michigan, and Illinois requesting copies of the documents that Patriot submitted for state approval. In response to the requests, Indiana produced thousands of documents, including Patriot's systems manuals, quality assurance manual, and individual modular submissions. None of these documents were marked confidential. Michigan and Illinois produced similar documents in response to Sterling's requests, including various systems manuals. Patriot wrote to each state demanding that it take immediate remedial action to preserve the confidential nature of these documents; however, none of the states complied or indicated that the documents were improperly produced. Although none of the documents were marked confidential, Patriot contends that the information it submitted to each state is proprietary and confidential. Sterling asserts that the only alleged trade secret/confidential information not contained in materials obtained from the FOIA requests are: (1) bills of material; (2) prewrites; (3) pricing information contained in the prewrites; (4) order forms; and (5) information regarding which models are the best sellers. Otherwise, everything that Patriot contends is confidential and trademarked was produced in response to the FOIA requests.

**\*2** In June of 2006, the district court entered a preliminary injunction against Sterling enjoining it from:
> [u]sing, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriot's copyrights, confidential information, trade secrets, or computer files.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2008 WL 90081                                                    Page 3

--- F.3d ----, 2008 WL 90081 (7th Cir.(Ind.))

**(Cite as: 2008 WL 90081 (7th Cir.(Ind.)))**

The preliminary injunction also required Sterling to:

> [c]ertify that copied data and materials of Patriot's property, confidential information and trade secrets on computer files and removable media (CDs, DVDs, tapes, etc.) have been deleted or rendered unusable.

Sterling does not quibble with the injunction's prohibition on using the computer files obtained from Patriot's computers; it asserts, however, that the remainder of the injunction is so vague as to constitute only a general prohibition not to break the law, leaving it without guidance as to when its actions might violate the injunction.

[1] We review the district court's decision to grant a preliminary injunction for abuse of discretion. *Foodcomm Int'l v. Barry,* 328 F.3d 300, 303 (7th Cir.2003). Rule 65(d) of the Federal Rules of Civil Procedure requires that the injunction set "forth the reasons for its issuance; ... be specific in terms; ... [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ." *See also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.,* 299 F.3d 643, 646 (7th Cir.2002) (stating that any injunction issued by a federal district court must be detailed and specific to ensure proper enforcement through contempt proceedings or otherwise); *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 619 (7th Cir.1998) (finding that an injunction must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt"). This requirement of specificity spares courts and litigants from struggling over an injunction's scope and meaning by informing those who are enjoined of "the specific conduct regulated by the injunction and subject to contempt ." *Marseilles Hydro Power,* 299 F.3d at 647 (citing *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.,* 84 F.3d 367, 371 (10th Cir.1996)); *Hispanics United of DuPage County v. Village of Addison,* 248 F.3d 617, 620 (7th Cir.2001).

[2] The preliminary injunction entered by the district court uses a collection of verbs to prohibit Sterling from engaging in certain conduct, but ultimately it fails to detail what the conduct is, *i.e.,* the substance of the "trade secret" or "confidential information" to which the verbs refer. While the law prohibits using another's trade secrets, *American Can Co. v. Mansukhani,* 742 F.2d 314, 328 (7th Cir.1984), it is not clear from the injunction order what the trade secret or confidential information is in this case. Patriot claims that its trade secret is the "playbook" for constructing modular homes consisting of its blueprints, engineering calculations, quality control manuals, and other documents. But it does not deny that much of this information was readily available when Sterling submitted FOIA requests because at that time Patriot had not asked the states to keep the information confidential.

*3 In *American Can,* a case involving a similar issue, the plaintiff accused the defendant, a former employee, of misappropriating its trade secrets for a certain type of commercial jet ink. We found that the district court erred in issuing a preliminary injunction enjoining the defendant from misappropriating the plaintiff's trade secrets without determining whether the defendant's new inks were in fact substantially derived from plaintiff's trade secrets. 742 F.2d at 326 (finding that the district court erred when it failed to consider "the public information about plaintiff's ink formulas, particularly as revealed in patent documents, and [defendant's] own knowledge and experience" in determining the scope of the injunction).

Patriot argues that there is no requirement that a court identify each and every element of copyright originality or trade secret and that the injunction identified specific proscribed acts. We disagree. The district court did not specify what information is a trade secret; the parties also dispute what information is protected. Sterling cannot tell, and neither can we, whether using the information it obtained through the FOIA requests would violate the injunction. While it is not always easy to ascertain what information is a trade secret or confidential at this stage of the proceedings, the district court still must make this determination in

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2008 WL 90081                                                                    Page 4

--- F.3d ----, 2008 WL 90081 (7th Cir.(Ind.))

**(Cite as: 2008 WL 90081 (7th Cir.(Ind.)))**

order to clearly delineate Sterling's responsibilities pursuant to the injunction. *Id.* at 332 ("The problem of framing an appropriate order may be particularly acute in trade secret cases, but trade secret injunctions that are too vague must be set aside.") (Internal citations omitted.) In fact, Patriot stated during oral argument that the only way Sterling might know that it violated the injunction order is to look at the transcript from the preliminary injunction hearing. This requires a lot of guesswork on Sterling's part in order to determine if it is engaging in activities that violate the injunction, since the order itself is a little more than a recitation of the law. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 543 (7th Cir.1998) (finding that a provision of an injunction that enjoins the defendant from inducing the plaintiffs' sales agents and former sales agents to engage in "unlawful insurance practices" but failing to specify the practices does not comply with Rule 65(d)); *City of Mishawaka v. Am. Elec. Power,* 616 F.2d 976, 990 n. 18 (7th Cir.1980) (vacating an injunction enjoining defendants "from monopolizing or attempting to monopolize the distribution and sale of electric power" because the injunction was too vague to identify the activities enjoined); *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108, 1113 (8th Cir.1969) (finding that a preliminary injunction stating that "[a]ll defendants separately and jointly are restrained from using or disclosing trade secrets and confidential technical information of plaintiff to any person, firm or corporation" is impermissibly vague). *Cf. Syntex Ophthalmics, Inc. v. Tsuetaki,* 701 F.2d 677, 684 (7th Cir.1983) (upholding a preliminary injunction where the district court's order placed defendants on notice of the restrained acts and provided a procedure for interpreting and applying the injunction and distinguishing between plaintiff's trade secrets and information in the public domain).

**\*4** For these reasons, we VACATE the preliminary injunction because it lacks specificity as required by Rule 65(d). [FN2] Accordingly, we REMAND for proceedings consistent with this opinion. The Defendants-Appellants are awarded their costs.

FN1. Circuit Judge Ann Claire Williams

was a member of the panel when this case was orally argued on March 29, 2007. Subsequently, Judge Williams deemed it appropriate to recuse herself from further participation in the case and Circuit Judge William J. Bauer was designated to join the panel as her replacement. Judge Bauer has read the briefs and listened to a recording of the oral arguments. He has, in all respects, fully participated in the case since joining the panel.

FN2. Separately, Sterling filed a motion to dismiss Patriot's CFAA claim, which the district court denied; however, we need not resolve this issue because the district court's decision was interlocutory and not immediately appealable unless Sterling received certification to appeal, which it did not.

--- F.3d ----, 2008 WL 90081 (7th Cir.(Ind.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.