IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLTON TECHNOLOGIES, INC., | |
| Plaintiff, | No. 07 C 6757 |
| v. | Judge Coar |
| JEFFREY GRAFSTEIN and BIZ 120, INC., | Magistrate Judge Mason |
| Defendants. | |

## DEFENDANTS' MOTION TO COMPEL AND FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.2, Defendants Jeffrey Grafstein ("Grafstein") and Biz 120, Inc. ("Biz 120") (collectively "Defendants") respectfully move this Court to compel Plaintiff Carlton Technologies, Inc. ("Plaintiff") to completely respond to Defendants' written discovery requests. Pursuant to Fed. R. Civ. P. 37(a) and the inherent powers held by this Court, Defendants also respectfully move this Court to sanction Plaintiff, including ordering it to pay Defendants' attorneys' fees and costs incurred in bringing this Motion. In support of their Motion, Defendants state as follows:

## I.   INTRODUCTION

Plaintiff has consistently demonstrated a patent disregard for its discovery obligations under the Federal Rules. Though Plaintiff's discovery responses were due more than *two months ago* and the parties are now on the eve of the discovery cut-off date (July 15, 2008), Plaintiff has yet to adequately answer Defendants' interrogatories or produce *any* meaningfully responsive documentation. Defendants' many efforts to obtain discovery – including sending Plaintiff detailed Rule 37(a) correspondence setting out the many specific deficiencies in its responses, a Rule 37 telephone conference during which these deficiencies were discussed, and numerous

follow-up e-mails and telephone calls – have all gone by the wayside. Defendants now find themselves in the precarious position where, having fully complied with *their* discovery obligations and produced to Plaintiff in excess of 16,000 designated, responsive documents, they are yet to receive *any* substantive discovery from Plaintiff. Without this discovery, Defendants cannot possibly mount a defense and cannot meaningfully prepare for the parties' impending settlement conference before this Court.

## II.    BACKGROUND

1.    On April 11, 2008, Defendants served on Plaintiff written Interrogatories and Requests for Production. (Copies of Defendants' First Set of Interrogatories to Plaintiff and Defendants' First Request for Production of Documents to Plaintiff are attached hereto as Exhibit A.)

2.    Under Fed. R. Civ. P. 33 and 34, Plaintiff's responses were due to be served on Defendants by May 12, 2008.

3.    On May 12, 2008, Plaintiff served on Defendants pleadings that in form appear to be discovery responses, but, in substance, come nowhere close to being such. (Copies of Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories and Plaintiff's Objections and Responses to Defendants' First Set of Requests for Production are attached hereto as Exhibit B.) Not a single document accompanied Plaintiff's responses.

4.    On May 15, 2008, Defendants, pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.2, sent Plaintiff a letter explaining the specific, numerous deficiencies in Plaintiff's discovery responses and asking Plaintiff to correct these deficiencies. Defendants sent the letter in a good faith effort to resolve this issue without necessitating the Court's involvement. (A copy of Defendants' May 15, 2008 letter is attached hereto as Exhibit C.)

5.    Plaintiff did not respond to Defendant's Rule 37 letter.[1]  On May 27, 2008, Defendants' counsel sent Plaintiff's counsel an e-mail, inquiring as to the status of Plaintiff's response.  (A copy of the May 27, 2008 e-mail correspondence is attached hereto as Exhibit D.)  Following this e-mail, Plaintiff's counsel called Defendants' counsel and the parties were able to schedule a Rule 37 telephone conference for May 30, 2008.

6.    On May 30, 2008, during the Rule 37 conference, Plaintiff's counsel stated that he would check with Plaintiff as to the status of the outstanding documents.  As for Plaintiff's Interrogatory Answers, Plaintiff's counsel stated that Plaintiff would supplement its Answers to a number of Interrogatories (specifically, Nos. 7, 8, 9, 11, 17, 18, 20, and 21), but refused to answer several others (Nos. 4, 16, and 22), though these Interrogatories are targeted to ascertain information directly at issue in this litigation, specifically: (a) the extent of damages Plaintiff incurred to date from Defendants' alleged misconduct; (b) the information that Plaintiff alleges in its Complaint to be "sufficiently secret to derive economic value from not being generally known to the public" and that it claims Defendants misappropriated in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*; and (c) whether it is Plaintiff's position that Grafstein's Employment Agreement barred him from accepting business from alleged Plaintiff's customers that he did not solicit.  (A copy of the May 30, 2008 e-mail summarizing the parties' Rule 37 conference is attached hereto as Exhibit E.)

7.    Despite its counsel's commitments during the Rule 37 conference, Plaintiff did not supplement its discovery responses.  Accordingly, Defendants' counsel again e-mailed Plaintiff's counsel on June 6, 2008, inquiring about the status of the responses.  Plaintiff's counsel sent a one-line reply, stating, "I am working on the document production and antcipate

---

[1] The Rule 37 letter requested Plaintiff's response by May 22, 2008.  (*See* Exhibit C at p. 5.)

[sic] producing them next week." (A copy of the June 6, 2008 e-mail exchange is attached hereto as Exhibit F.)

8.    Despite this correspondence, no documents or supplemental Interrogatory Answers arrived the following week. Instead, on June 12, 2008, Plaintiff's counsel called Defendants' counsel to discuss settlement. In response, Defendants' counsel stated in e-mail correspondence:

> As we have communicated to you and your colleagues since the inception of this lawsuit, Mr. Grafstein is interested in amicably resolving this matter. But it is in everyone's interest to ensure that the parties' settlement expectations are reasonable and realistic.
>
> ...
>
> Despite repeated requests, including formal requests in our written discovery, we have yet to receive any damages calculation from your client.
>
> ...
>
> My client continues to question why he has any incentive to begin discussing settlement without having received a single document from your client.

(A copy of Defendants' counsel's June 17, 2008 e-mail is attached hereto as Exhibit G.) Plaintiff's counsel again ignored Defendants' concerns about having received virtually no discovery, providing no response to them whatsoever.

9.    On June 30, 2008, Defendants' counsel e-mailed Plaintiff's counsel yet again and directly asked, "When are you going to produce your documents?" (A copy of the June 30, 2008 e-mail is attached hereto as Exhibit H.) Plaintiff's counsel then called Defendants' counsel and stated that he needed to "make some calls" to ascertain when Plaintiff's production would be ready. During the same telephone conference, Plaintiff's counsel actually insisted that he considered Plaintiff's document production "irrelevant" in light of the impending settlement

conference. Defendants' counsel disagreed, and on July 1, 2008, e-mailed Plaintiff's counsel to again reiterate Defendants' request for Plaintiff's document production. (A copy of the July 1, 2008 e-mail is attached hereto as Exhibit I.)

10. On July 3, 2008, Defendants finally received a disk purportedly containing Plaintiff's "production of documents." (A copy of correspondence from Plaintiff's counsel enclosing the disk is attached hereto as Exhibit J.) Though Fed. R. Civ. P. 34 states that a party who produces documents "shall organize and label them to correspond with the categories in the request," Plaintiff failed to designate to which requests the produced documents pertained.

11. Based on its own review, however, Defendants' counsel was able to determine that several produced pages (*i.e.*, an electronic communications policy and an e-mail from Defendant Grafstein dated May 25, 2007) consist of some of the documents mentioned by Plaintiff in its Rule 26(a)(1) Initial Disclosures, served on Defendants back in early *March 2008*. The entire remainder of this "production" – over 600 pages total – consists of automatically generated, incomprehensible IT lists and print-outs, the meaning or relevance of which is impossible to ascertain without any designation or explanation from Plaintiff.

12. Defendants' counsel immediately contacted Plaintiff's counsel in what turned out to be yet another series of unsuccessful attempts to elicit discovery. Defendants' counsel stated in a July 3 e-mail:

> Even a quick review of your client's document "production" establishes that it is deficient. As an initial matter, you have failed to designate which documents are responsive to which requests, which makes it impossible for us to determine which requests you have actually responded to. As an example of your client's stubborn refusal to comply with the Federal Rules of Civil Procedure, and as we have discussed on several occasions (including during our Rule 37 conference on May 30), your client has yet to produce a list of its "Clients" that Mr. Grafstein was barred from soliciting under the terms of his Employment

> Agreement. ... We are entitled to this information and other information we have sought, in advance of the settlement conference.

(A copy of the July 3, 2008 e-mail is attached hereto as Exhibit K.)  Defendants' counsel requested Plaintiff to supplement its discovery, as Plaintiff committed to do during the May 30, 2008 Rule 37 conference (the summary of which was attached to the July 3 e-mail), by July 11, 2008.

13.    Unfortunately, Plaintiff's counsel faltered again.  No supplemental discovery was produced.  This time, however, Plaintiff's counsel actually pretended not to know which responses were outstanding:  "Can you send me any specific documents you think you need before mediation, that you do not already have."  (A copy of the July 7, 2008 e-mail is attached hereto as Exhibit L.)  This e-mail is, to say the least, insulting, given the fact that aside from serving Defendants' specific discovery requests on Plaintiff back in *April 2008*, Defendants' counsel had reiterated to Plaintiff's counsel for months, using Rule 37 correspondence and numerous follow-up telephone and e-mail communications, specifically what discovery was being sought.

14.    Defendants' counsel responded by stating that their request for *all responsive documents to Defendants' discovery requests* stood, and attaching a copy of both the requests and the Rule 37 letter for Plaintiff's reference.  Yet, Plaintiff's counsel replied that Defendants' counsel's response was "not helpful" and requested "additional specificity."  (A copy of the July 9, 2008 e-mail exchange is attached hereto as Exhibit M.)

15.    In its continuing good faith effort to work with Plaintiff's counsel and resolve this discovery issue without the Court's intervention, Defendants' counsel responded by e-mailing Plaintiff's counsel a brief summary of some of the most basic outstanding document requests. (A copy of Defendants' counsel's July 10, 2008 e-mail is attached hereto as Exhibit N.)  This e-

mail, like scores of preceding correspondence tailored to elicit Plaintiff's compliance with its most basic discovery obligations, went unanswered. No supplemental discovery has been produced.

16.    To date, Defendants find themselves in the extremely precarious position where, despite having fully complied with their own discovery obligations, they are yet to receive Plaintiff's responses to multiple Interrogatories that Plaintiff agreed to answer during the Rule 37 conference back in *May*, or to receive *any* meaningful document production.

## III.    ARGUMENT

17.    Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. ... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." In ruling on a motion to compel, "courts have consistently adopted a liberal interpretation of the discovery rules," treating any request for discovery as relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). Thus, broad scope of discovery is presumed and the party opposing any discovery request bears the burden of demonstrating why that particular request is improper under the Federal Rules. *See id.*

18.    Plaintiff's persistent, utter disregard for its most basic discovery obligations in this case has been staggering. Since the beginning of this litigation, Plaintiff has conducted itself as if discovery involves only a one-way flow of information and Defendants are the only ones required to produce anything.

19.    Of course, discovery is a *two-way* street that allows a party to request information from the other party. Fed. R. Civ. P. 26(b); *see Am. Hardware Mfrs. Ass'n v. Elsevier, Inc.*, 2007

U.S. Dist. Lexis 39639 at *8-9 (N.D. Ill. 2007) (unpublished[2]); *Kodish*, 235 F.R.D. at 449-50. The inevitable fact that one party in every case happens to be the plaintiff alleging to have been wronged does not give that party the right to skirt its discovery obligations. Yet, Plaintiff has effectively advanced this very absurd theory of litigation by repeatedly telling Defendants' counsel to "ask [his] client" for the requested information, and unabashedly ignoring Defendants' repeated requests for discoverable information.

### A.     Plaintiff Should Be Compelled To Fully Answer Defendants' Interrogatories

20.     Plaintiff's Answers to Interrogatory Nos. 4, 8, and 16 assert that Plaintiff "will provide information responsive to these interrogatories in accordance with the Court's Scheduling Order" are improper. None of the Court's orders in this case, including Magistrate Judge Mason's May 5, 2008 scheduling order that Plaintiff apparently alludes to, excuses or changes the parties' obligations under the Federal Rules to respond to discovery within 30 days of service of the requests. Accordingly, Plaintiff should not be permitted to withhold information from Defendants on this vague objection. (*See* Exhibits A and B.)

21.     Interrogatories No. 7, 8, 9, 11 and 20 ask Plaintiff to identify the clients: (a) with which Plaintiff allegedly had "recurring and long-term" relationships, as alleged in Paragraph 9 of the Complaint; (b) with which Plaintiff conducted business within the last 12 months of Grafstein's employment, because the Employment Agreement at issue here (quoted in the Complaint and attached hereto as Exhibit P) expressly defines off-limit "clients" as "any person or entity for whom [Plaintiff] performed services or sold equipment within a twelve (12) month period prior to the termination of [Defendant Grafstein's] employment"; (c) with which Defendants were prohibited from conducting business; (d) for which Grafstein created proposals,

---

[2] For the Court's reference, a copy of this unpublished decision is attached hereto as Exhibit O.

etc., as alleged in Paragraph 17 of the Complaint; and (e) with which Grafstein had contact during his employment with Plaintiff.

22.    Although these Interrogatories are aimed to discover essential information at the heart of Plaintiff's Complaint, which alleges that Defendants unlawfully solicited and conducted business with Plaintiff's current and prospective clients, Plaintiff has refused to provide this information.    Instead, Plaintiff has circuitously referred Defendants back to the definition of "client" in the Employment Agreement, stated that the requests "call for expert analysis," and/or stated that the information sought is "exclusively within the knowledge" of Defendants. (*See* Exhibit A.)

23.    As a result, Defendants still do not have even the most basic information pertinent to the very subject matter of this litigation.    Specifically, Defendants do not know which of their clients Plaintiff claims were off-limits to them under the terms of the Employment Agreement and which clients, if any, Plaintiff believes Defendants solicited in violation of the Agreement and other legal obligations.

24.    As Defendants' counsel pointed out in its Rule 37 letter (*see* Exhibit C at pp. 2-3), it defies any logic (and flies in the face of the Federal Rules) for Plaintiff to allege that Defendants unlawfully solicited and conducted business with its clients, but to refuse to answer Defendants' *most basic* inquiries as to the identities of these off-limit clients and the clients Plaintiff alleges Defendants pursued in violation of the Employment Agreement and other legal obligations.    Plaintiff either has evidence that Defendants unlawfully solicited its clients or it does not.    If Plaintiff in fact has this evidence, Defendants are entitled to review it.

25.    Similarly, Plaintiff has not adequately answered Interrogatories No. 15 and 22. As to the former, although Paragraph 29 of the Complaint asserts that Defendants sold and

shipped product to Plaintiff's "second largest customer," Plaintiff has refused to provide any purchasing history that would enable Defendants to verify the entity's status as indeed Plaintiff's second largest customer. Plaintiff has also refused to respond to Interrogatory No. 22, which essentially seeks to ascertain whether it is Plaintiff's position that Defendants were barred (including under the terms of the Employment Agreement) from accepting business from even those customers they did not actively solicit. Plaintiff's refusal to answer this latter Interrogatory on the grounds that it calls for a "legal conclusion" is puzzling and, in any case, improper.

**B.     Plaintiff Should Be Compelled To Produce Responsive Documents**

26.     Plaintiff's Responses to Defendants' Requests for Production, just like its Interrogatory Answers, are lacking and evasive. In their vast majority, Plaintiff's Responses consist of objections and refusals to provide discoverable documentation. (*See* Exhibit B.) Defendants have yet to receive *any* documents designated as responsive to their requests.

27.     Plaintiff's response to Request No. 1 is a prime example of Plaintiff's misguided position with respect to discovery. The request seeks "all documents consulted, referred to or relied upon in answering Defendants' First Set of Interrogatories to Plaintiff." (*See* Exhibits A and B.) Although Plaintiff made this very same request to Defendants in *its* Interrogatory No. 3 and Defendants responded in good faith by producing responsive documents, Plaintiff objects to Defendants' Request No. 1 on the grounds that it seeks information "already in possession" of Defendants. Nothing has been produced in response. To the extent that Plaintiff relied on non-privileged documents in preparing is Interrogatory Answers, Defendants are entitled to review these documents, unless, of course, Plaintiff views its own Interrogatory No. 3 as objectionable.

28.     Plaintiff also improperly objected, and has produced no documents in response, to Request Nos. 6-13, 17, 21, 29-31, 34-35, 41-44, 48-50, 57, and 62. These requests essentially seek: (a) verifying information of the clients with which Defendant Grafstein dealt while

employed with Plaintiff; (b) copies of the documents and other information that Plaintiff claims is confidential, proprietary and/or a trade secret, and that Plaintiff claims Defendants misappropriated; and (c) copies of Plaintiff's evidence that would demonstrate that Defendants engaged in the wrongdoing asserted in the Complaint. (*See* Exhibits A and B.)

29.     Defendants cannot possibly mount a defense or prepare for the impending settlement conference without this information. As Defendants' counsel's Rule 37 letter states (*see* Exhibit B at p. 3), Plaintiff cannot have it both ways – it cannot make sweeping allegations about the sanctity of its customer relationships, the confidentiality of its information, and the impropriety of Defendants' conduct, and yet refuse to produce information that would allow Defendants to verify these allegations.

30.     Request Nos. 16 and 24 ask for documents relating to Grafstein's employment with Plaintiff. At a minimum, these requests are proper, if for no other reason, then under the Illinois Personnel Records Review Act, 820 ILCS § 40.0.01, *et seq.*. Yet, Plaintiff has responded with nothing other than vague, boilerplate objections. (*See* Exhibits A and B.) Defendants do not understand the rationale for withholding these documents, and request that they be produced.

31.     Similarly lacking are Plaintiff's Responses to Request Nos. 25-28. Though these requests were tailored specifically to address issues of waiver, which Defendants pled as an Affirmative Defense in their Answers and Affirmative Defenses to the Complaint, Plaintiff evaded responding to these requests, as to many others, by asserting boilerplate objections and producing no documents. (*See* Exhibits A and B.)

32.     Request No. 40 seeks copies of communications that Defendant Grafstein allegedly sent to Carlton customers and contacts during the restricted period, as alleged in Paragraph 28 of Plaintiff's Complaint. All that Plaintiff has belatedly produced that could be

deemed responsive to this request is a single, one-page e-mail Defendant Grafstein sent to a vendor. (A copy of the single e-mail Plaintiff produced to Defendants on July 2, 2008, is attached hereto as Exhibit Q.) This response is not sufficient, unless this is the only evidence that Plaintiff has of Grafstein's wrongdoing (in which case, Plaintiff should state so).

33.     In Paragraph 39 of the Complaint, under the Count alleging a violation of the Computer Fraud and Abuse Act ("CFAA"), Plaintiff alleges that it has made "payments for measures at discovering the extent and consequences of Grafstein's unauthorized activities and damages to the integrity of [Plaintiff's computer] data." Plaintiff has improperly refused to produce any documents responsive to Request No. 45, which seeks related verifying documents. (See Exhibits A and B.)

34.     Plaintiff has also objected and refused to provide any documents responsive to Request Nos. 51 and 53, tailored to Defendants' Affirmative Defense of unclean hands, pled in their Answers and Affirmative Defenses to the Complaint. (See Exhibits A and B.) Plaintiff possesses this information and should be compelled to produce it.

35.     Request Nos. 60 and 61 have also been improperly disregarded by Plaintiff as apparently not warranting any meaningful response, though these requests seek documents referenced in and relating to specific, significant assertions made in Paragraphs 18 and 29 of the Declaration of Ryan Bracken, which was filed with this court in conjunction with the Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction. Among these assertions, the Declaration states that Plaintiff "spent in excess of $5,000 investigating Grafstein improper use of its computer systems." Bracken's Declaration presumably contains relevant information, or he would not have submitted it in the first place. The "investigation" discussed

in the Declaration is presumably relevant, as it relates directly to Plaintiff's CFAA claim. Defendants are entitled to review the requested supporting documentation.

C. **Plaintiff Should Be Sanctioned For Its Bad Faith Refusal To Adequately Respond To Defendants' Discovery Requests**

36.    Fed. R. Civ. P. 37(a)(4) provides that if a motion to compel is granted:

> the court shall . . . require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

37.    Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to [engage in] such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey League*, 427 U.S. 639, 643 (1977). The Seventh Circuit has held that Rule 37(a)(4) contains a presumption that the victor on a motion to compel is entitled to its costs, including attorneys' fees. *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994).

38.    Courts also have inherent powers to impose sanctions to protect the due and orderly administration of justice and maintain the authority and dignity of the court. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (internal cite omitted); *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (holding that a court's inherent power to sanction for conduct which abuses the judicial process is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

39. · Plaintiff's bad faith refusal to produce relevant information in this case has prejudiced not only Defendants, but also this Court. Over the period of the past several months, Plaintiff's stubborn refusal to see discovery as anything other than a one-way flow of information from Defendants has required extensive follow-up from Defendants' counsel and drained the resources of Defendants, an individual and his young business. And now, the Court's time and resources are being expended to resolve this issue, as Defendants' numerous good efforts to do so have unfortunately proven unsuccessful.

40.     Plaintiff's evasive, bad faith tactics to evade its discovery obligations should not be endorsed by this Court. Accordingly, Defendants respectfully request that this Court sanction Plaintiff by ordering it to pay the attorneys' fees and costs incurred by Defendants in having to bring this Motion.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Compel and for Sanctions in its entirety.


Dated: July 14, 2008                          Respectfully submitted,

                                              **JEFFREY GRAFSTEIN and BIZ 120, INC.**

                                              By: /s/ Sonya Rosenberg
                                                      One of Their Attorneys

Michael G. Kelber
Chad W. Moeller
Sonya Rosenberg
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 2200
Chicago, IL  60602-3801
(312) 269-8000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Defendant's Motion to Compel and for Sanctions*, was served upon the following parties electronically (via ECF) on June 14, 2008:

> Ronald Y. Rothstein
> John M. Dickman
> Sheila P. Frederick
> WINSTON & STRAWN LLP
> 35 West Wacker Drive
> Chicago, IL 60601

> By:/s/ Sonya Rosenberg
>         One of Defendants' Attorneys

NGEDOCS: 1547936.2